No. 1,565.

SOURWINE ET AL. *v.* SUPREME LODGE KNIGHTS OF PYTH-
IAS OF THE WORLD.

INSURANCE.—*Equitable Right of Membership, Though not Recognized as
Member by the Officers.—K. of P.*—Where a member in good stand-
ing, of the first and second classes of the endowment rank of the
Order of Knights of Pythias of the World, requested to be trans-
ferred to the fourth endowment class (as was his constitutional
right), and did all required of him to enter the fourth class, and
was entitled to enter the same, but the officers of the order wrong-
fully and arbitrarily refused him admittance into such class, equity,
on the death of the insured, and in an action by the beneficiary,
will regard that as done which in good conscience ought to have been
done, and will grant relief as though it had been done. In such
case one may be, by the courts, regarded as entitled to the rights of
membership, although not recognized as such by the officers.

SAME.—*Equitable Relief.*—In such case, equity will grant relief, al-
though the insured never in his lifetime compelled the transfer, by
mandate, as he might have done.

SAME.—*When Insurer is Estopped to Complain.*—The insurer, in such
case, is in no position to complain of whatever hardship, if any,
may arise from the right of the insured; for the insurer, and not
the insured, is responsible therefor. A party can not take advant-
age of his own wrong.

SAME.—*Estoppel.—Acquiescence.—Tender.—Mandate.*—The insured
having fully complied with the rules of the insurer, he can not be
deemed to have acquiesced in its officer's wrongful conduct, and to
have abandoned his legal and equitable rights merely because he
did not compel the transfer or make a formal tender of fourth class
dues, which would have been useless in the face of defendant's con-
tinued refusal to make the transfer.

From the Clay Circuit Court.

*A. W. Knight,* for appellants.

*E. S. Holliday* and *G. A. Byrd,* for appellee.

GAVIN, J.—The correctness of the trial court's action
in sustaining the demurrer to appellants' complaint is
brought in review before us.

The appellants are the beneficiaries of one Jonathan

Croasdale who, in 1877, was admitted as a member of the appellee's endownment rank, entering classes 1st and 2d, which entitled him to $1,000 and $2,000 respectively. At that time all members paid at the same rate. In 1884 the constitution of the order was so amended as to establish a "fourth class" in which the amounts to be paid were graduated according to age. Provision was then made for transfers from the original classes to this class up to May, 1885, the time being afterwards extended to October, 1885. Croasdale being an old man declined to transfer because of the heavier assessments, as he had a right to do.

In 1888 the constitution was again amended permitting transfers from the old divisions. By the constitution then in force section 1, article III, "an applicant for admission to membership in the endowment rank must be a Knight of Pythias in good standing not over fifty years of age, be recommended by some competent practicing physician appointed by the board of control of the endowment rank, and be examined in accordance with the published rules for medical examiners on the form provided by said board of control, which must be approved by the medical examiner-in-chief, and the necessary fee paid before he can take the obligation admitting him to membership."

It was further provided that "all present members of the first, second and third classes of the endowment rank in good standing in the rank may be admitted to the fourth class by complying with the requirements of section 1 of this article, and the surrender of the endowment certificate or certificates held in said first, second or third classes. *In these cases the limitation as to age shall not apply.*"

In March, 1889, said Croasdale being then a member in good standing of the first and second classes in said

endowment rank asked to be transferred to the fourth class.

He was duly examined in accordance with the published rules for medical examiners on the form provided by appellee's board of control, by a competent practicing physician regularly appointed by appellee. By said examination it was ascertained that said Croasdale was in perfect mental and physical health and condition, and he was unconditionally recommended by such physician. The .application and medical examination with the proper fees were duly forwarded to the appellee's medical examiner-in-chief by Croasdale, who also offered to surrender his certificates, but on March 18, 1889, said examiner-in-chief arbitrarily, and without any valid and legitimate excuse or cause disapproved said examination and rejected the application peremptorily because of his age, and for no other reason.

On March 20, 1889, in response to an inquiry, he again declined to entertain it. On the same day the application was again renewed and forwarded to the examiner with the examination as before, but it was again rejected as before.

On January 30, 1891, the matter was laid before the supreme secretary and board of control who again rejected the application and approved the action of the medical examiner-in-chief, all being done arbitrarily and without any justifiable valid and legitimate cause, although said Croasdale was in all respects possessed of all the requirements provided for and had, in all things, complied with the laws, rules and regulations entitling him to such transfer, and was then, and continued to the time of his death, ready and willing to pay all dues, fees and assessments called for and to comply with all of appellee's rules and regulations.

On May 5, 1892, said Croasdale died. The first and second classes had then become so depleted that they paid but trifling sums to beneficiaries. Proper proofs were made and appellants in this action seek to recover upon the ground that Croasdale was equitably a member of the fourth class.

Clearly, Croasdale possessed all the necessary qualifications, complied strictly with the requirements of appellee's constitution, and was in fact entitled to be, and under the allegations of the pleadings, ought to have been, transferred.

Appellee's position is that nevertheless he was not transferred in fact, and could not be without the approval of the medical examiner in chief, and for this reason his beneficiaries can not recover.

It is further contended that he had, by not asserting his legal right to the transfer and not tendering the dues, acquiesced and abandoned his right to the transfer.

The constitution and by-laws of such an organization are elements of the contract of insurance.

They measure and determine the member's duties and liabilities, and not only these but his rights as well. *Supreme Lodge K. of P.* v. *Knight,* 117 Ind. 489.

Not only the private members, but the officers, are under obligation to conform their conduct to them.

Under the averments, the action of the medical examiner in chief, in rejecting the application solely by reason of Croasdale's age, was in direct violation of the constitution.

Croasdale's fellows in the first and second classes had been permitted to transfer, and thus his classes had been depleted. In so doing they and the association only exercised their legal right, but the right to follow them was vested, by the constitution, in Croasdale. He was already a member of the rank, and this right of transfer

was a contract right, and a beneficial one of which the officers could not arbitrarily deprive him. *Supreme Council, etc.*, v. *Forsinger*, 125 Ind. 52; *Supreme Lodge K. of P.* v. *Knight, supra.*

His position was manifestly radically different from that of one who was not a member of the organization, but was seeking admission into its ranks, as in the case of *Matkin* v. *Knights of Honor*, 82 Tex. 301. The contractual rights and obligations were already existing between him and the association.

Having done everything that was to be done by him to effectuate the transfer, and being in all things entitled to it, it did not rest in the discretion of the examiner to refuse him. Had the examiner refused him because he was not, in his judgment, possessed of the proper physical qualifications, it might well be that the examiner's action, in the absence of fraud or mistake, at least, would be final and conclusive against him; but no such question is here presented. On the contrary, the disapproval is arbitrary and without cause solely by reason of his age, which, by the express letter of the society's law, is not a reason for rejection.

Here is a manifest wrong. Yet it is asserted that although there was a wrong there is now no remedy. To so hold would be, to use a favorite phrase of Judge ELLIOTT's, a reproach to the law. The arm of the law has not been so shortened as to leave the appellants remediless.

If the application of the stricter rules of law, as formerly administered, do not furnish the remedy, the more expansive and beneficent principles of equity are ample for the purpose.

An eminent law writer speaks thus: ''Equitable remedies, on the other hand, are distinguished by their flexibility, their unlimited variety, their adaptability to

circumstances, and the natural rules which govern their use. There is in fact no limit to their variety and application, the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties." 1 Pom. Eq., section 109.

Again he says, at section 111: "It has, therefore, never placed any limit to the remedies which it can grant; either with respect to their substance, their form, or their extent; but has always preserved the elements of flexibility and expansiveness, so that new ones may be invented or old ones modified, in order to meet the requirements of every case, and to satisfy the needs of a progressive social condition, in which new primary rights and duties are constantly arising, and new kinds of wrongs are constantly committed."

While this case is one of a peculiar nature, *sui generis,* for which neither the counsel nor the court have found any direct precedent, the application of a familiar rule of equity furnishes, as it seems to me, a safe guide to its disposition.

That this application ought to have been approved and that the transfer ought to have been made can not be successfully controverted, nor are these propositions denied by appellee's counsel. They assert, however, that while these things ought to have been done they were not. Equity furnishes the remedy for just exactly that state of affairs, for the very first maxim with which we meet in equity is that it "will regard that as done which in good conscience ought to be done." This principle has been applied, says the same author, "to every instance where an equitable *right*, with respect to the subject-matter, rests upon one person towards another: to every kind of case where an affirmative equitable duty to do some positive act devolves upon one party and a

corresponding equitable right is held by another party." Pom. Eq., section 364; vide, also, sections 369 and 370.

In *Kentucky, etc., Ins. Co.* v. *Jenks,* 5 Ind. 96, it was objected that there could be no recovery because no policy had issued, but the court said: "Jenks having been entitled to a policy in his lifetime, a court of equity will consider that done which should have been done," and sustained a decree for a satisfaction.

So, also, in *Woody* v. *Old Dominion Insurance Co.*, 31 Gratt. 362, and *Tayloe* v. *Merchants' Fire Insurance Co.*, 9 How. (U. S. R.) 390, where insurance contracts were to be, but had not been, issued, it was held that equity would enforce payment of the losses directly without there having been a previous decree for specific performance.

So equity will grant relief here, although Croasdale never in his lifetime compelled the transfer, by mandate, as he might have done.

We do not think it lies in appellee's mouth to complain that some hardship may be imposed on it by reason of his failure to insist on his rights in a court of law before his death.

For whatever hardship may arise therefrom, appellee, and not he, is responsible.

Neither do we think that appellee is in a position to take any advantage from the plea that by allowing this action appellants are permitted to reap the benefits of Croasdale's membership without his having borne the burdens. That he did not bear these burdens during the fifteen months after the final rejection of his application for transfer was due entirely to the wrongful conduct of appellee, and can in no degree be ascribed to any delinquency upon his part. Whatever unpleasant results may follow from appellee's own misconduct should be borne by appellee, and can not be shifted to others who are wholly innocent.

It is a well known maxim that parties are not to be permitted to take advantage of their own wrong.

In *Jackson* v. *Northwestern, etc., Relief Assn.*, 78 Wis. 463, we find a case closely analogous to the one under consideration. The membership of the deceased had there been declared forfeited, but there was, under the by-laws, a right to reinstatement on certain terms, among which was furnishing a satisfactory certificate of health. The member took the necessary steps, and mailed the application and money, with a proper certificate of health, but died before these were received at the office of the association, which thereupon, after notice of her death, rejected the application for reinstatement.

It is said by the Supreme Court, per ORTON, J.: "The court instructed the jury on that subject as follows: 'That Mrs. Jackson was dead before the reinstatement and money reached Madison, if you find such to be the fact, was good cause for the disapproval of her application.' This instruction was also erroneous. If Mrs. Jackson mailed the papers and money in proper time, according to the by-laws or the custom of the company, her rights became fixed by it, and her subsequent death, before the package reached the company, could not change them. She had done all that the company required of her by the notice of reinstatement."

Again it is said: "The court erred also by instructing the jury that the company had the right to reject her application for reinstatement 'upon the ground that it did not consider her statements in regard to health sufficient.'

"If Mrs. Jackson secured any right whatever by so responding to this last reinstatement notice of the company, then the certificate of health she sent with the other papers and the money did not depend upon how the company considered it, but upon its sufficiency in fact."

Sourwine *et al. v.* Supreme Lodge Knights of Pythias of the World.

Thus it is held that one may be by the courts regarded as entitled to the rights of membership although not recognized as such by the officers.

By deducting from the sums due appellants the amount of dues which would have been collectible from Croasdale in the fourth class, appellee will be in the same position it would have occupied had it complied with the requirements of its own laws and made the desired transfer.

Appellee's laws are, as we have said, made for the government of its officers, as well as its members. Had the officer obeyed the law, as Croasdale did, all controversy would have been avoided.

After Croasdale had so fully complied with appellee's rules we do not think he can be deemed to have acquiesced in its officer's wrongful conduct and to have abandoned his legal and equitable rights merely because he did not commence a mandate or make a formal tender of fourth class dues, which would have been useless in the face of appellee's continued refusal to make the transfer, which was equivalent to an announcement that it would not receive dues from him in that class.

Our conclusion, therefore, is that the trial court erred in sustaining the demurrer to the complaint.

Judgment reversed.

REINHARD, J., did not participate.

Filed April 25, 1895.