[No. 7216.  Decided July 16, 1908.]

CLARA RANCIPHER, *Respondent*, v. WOMEN OF WOODCRAFT,
*Appellant*.[1]

INSURANCE—MUTUAL BENEFIT INSURANCE—LAWS OF ORDER—CON-
STRUCTION—DELIVERY OF CERTIFICATE—INSURANCE WHEN EFFECTIVE.
A member of a beneficial association in good standing having a bene-
fit certificate for less than $2,000 has a right to an increase of her
certificate, as a matter of right, after passing the medical examina-
tion with approval and complying with the laws of the order, where
the laws provide that such a member can be permitted to increase
her certificate by making application, surrendering the old certificate,
being examined by the local physician and that the new certificate
shall be issued if the application is approved by the grand physician,
and where the by-laws did not reserve any discretion in the officers
to withhold the new certificate; hence the new insurance is effective
although the member died before delivery of the new certificate
therefor (FULLERTON, J., dissenting).

Appeal from a judgment of the superior court for Pierce
county, Reid, J., entered August 3, 1907, upon findings in
favor of the plaintiff, after a trial on the merits before the
court without a jury, in an action on a benefit insurance cer-
tificate. Affirmed.

*Govnor Teats* (*Robert G. Morrow*, of counsel), for ap-
pellant.

*Ralph Woods* and *Boyle, Warburton, Quick & Brockway*,
for respondent.

MOUNT, J.—The appellant is an incorporated fraternal
and beneficiary society on the lodge plan. Its headquarters
were located at Leadville, Colorado. One of its local lodges,
known as "Palm Circle No. 66," was located at Seattle in
this state. In 1901, Minnie Sullivan became a member of
Palm Circle, and took a certificate of insurance for $1,000
in the order. Her daughter, Annie Sullivan, was named

[1]Reported in 96 Pac. 829.

therein as beneficiary. The laws of the society provided, at § 116, as follows:

"Any member in good standing, having a benefit certificate for less than $2,000, who may desire to increase the amount of benefit, can be permitted to do so, subject to the following conditions, and not otherwise: He or she shall surrender his or her old certificate, sign a new membership application for the total amount of the benefits desired, be examined by Circle Physician, pay Circle Physician's fee, and pay to the Circle Clerk $1. His or her old certificate and his or her application, together with draft or money order payable to the Grand Banker, shall be forwarded by the Clerk of the Circle to the Grand Clerk. The Circle Physician's report shall be sent to the Grand Physician. If his or her application is approved by the Grand Physician, a new certificate shall be issued, but in no case shall the $1 be returned."

On November 23, 1903, Minnie Sullivan determined to exercise her right to increase the amount of her benefits from $1,000 to $2,000, and to make her two daughters, Annie Sullivan and Clara Rancipher, beneficiaries therein, each for $1,000. She applied to the clerk of Palm Circle, and received a blank application, which was properly executed, and which described the desired change. She was thereupon examined by the local physician. This examination was satisfactory, and the same was afterwards approved by the Grand Physician. The head clerk on December 5, 1903, received the application at Leadville, Colorado, as approved by the Grand Physician. The original certificate did not accompany the application for increase, and the head clerk thereupon requested the clerk of Palm Circle at Seattle to forward the original certificate to him, which was done, and the original certificate reached the head clerk on December 29, 1903. Thereupon, in the regular course of business, on January 1, 1904, a new certificate as applied for was issued to Minnie Sullivan for $2,000 which, if valid, was good for $1,500 in case of death within one year. The new certificate was then placed with certain clerks to be registered before it was for-.

warded. Before the new certificate had been forwarded from the office of the head clerk at Leadville, Colorado, that office received the following letter from the clerk of Palm Circle, Seattle:

"Seattle, Washington, January 5, 1903.

"Mr. J. L. Wright.

"Esteemed Neighbor:—Minnie Sullivan applied for a raise in her policy. I had no idea it would be granted. She has been almost dead for the past year. How any physician could pass her I can't tell. I do not want to get mixed up in it, but she is very sick again and the Managers home thought I should write you. I do not know who examined her, and I would rather not be brought into it, if possible.

"Fraternally yours,     Josephine McLaughlin, Clerk."

On receipt of this letter, the head clerk held the certificate for further investigation, and before anything further was done, Minnie Sullivan died on January 10, 1904. The association afterwards paid $1,000 to the guardian of Annie Sullivan, the beneficiary named in the original certificate, but refused to pay or recognize the claim of Clara Rancipher under the new certificate. This action was thereupon brought on the new certificate, and resulted in a judgment in favor of the respondent for $750, from which judgment this appeal is prosecuted.

The principal question in the case is whether the contract of insurance was complete without an actual delivery of the new certificate to Minnie Sullivan. It is conceded that this certificate was not delivered, and that the appellant held the same for investigation. The trial court found that the certificate was "improperly retained by the Grand Clerk and the officers of the association at Leadville." Appellant argues that this finding is contrary to the evidence, which shows that the certificate was retained for the purpose of investigating the charge that the insured was not at that time entitled to increased insurance. The correctness of this finding depends upon whether the association might reject the application in

its discretion.   If so, then the increased insurance did not become valid until a delivery of the contract.   But if the insured was entitled to an increase of her certificate as a matter of right, after having passed the medical examination and complied with the laws of the order, then there was no discretion in the executive officers of the order, and the contract was complete without the actual delivery of the new certificate.   It will, therefore, be necessary to consider only whether Mrs. Sullivan was entitled to the new certificate as a matter of right.

Section 116 of the laws of the order above quoted provides that any member in good standing, having a benefit certificate for less than $2,000, can be permitted to increase such certificate, by making application therefor, surrendering the old certificate, being examined by the Circle Physician, paying his fee, and paying a fee of $1 to the Circle Clerk.   "If his or her application is approved by the Grand Physician, a new certificate shall be issued."   All these requirements were complied with.   This provision is plain and direct.   It contains no reservation of discretion, and the approval of the Grand Physician seems to fix the status of the applicant and of the contract.   The issuance of the certificate thereafter is a mere ministerial matter.   No provision in the laws of the order is called to our attention wherein any discretion is reserved in such cases.   It is true that § 40, in defining the powers and duties of the Grand Guardian, who is the principal executive officer of the order, provides that "prior to actual introduction to benefit membership, he or she shall have power to summarily reject any applicant for membership in any circle at his or her discretion, even though such applicant be approved by the Grand Physician."   But this power is limited by express terms so that it does not apply to this case, because Mrs. Sullivan had already been actually introduced to benefit membership.   It is also true that § 115 of the laws of the order relating to a change of beneficiaries,

after defining the steps necessary to secure such change, provides that the Grand Clerk "shall thereupon prepare and cause to be signed a new benefit certificate as requested and forward the same to the Circle Clerk for delivery to the member." While this provision requires a delivery of the policy to the member, it does not, either in terms or impliedly, make such delivery a condition of liability on the contract, and under § 40, supra, the Grand Guardian could not summarily refuse to make delivery of the changed certificate. Luhrs v. Luhrs, 123 N. Y. 367, 20 Am. St. 754, 9 L. R. A. 534. If Mrs. Sullivan had lived she could have compelled the delivery of the certificate to her, because she had complied with all the laws of the order and had done all that she was required to do. Her right to increase was a contractual and beneficial right. The contract was fully completed as between her and the order. Sanborn v. Black, 67 N. H. 537, 35 Atl. 942; Sourwine v. Supreme Lodge, K. of P., 12 Ind. App. 447, 40 N. E. 646.

The appellant could avoid the contract only by some breach of condition by Mrs. Sullivan after it was issued, or for fraud on her part in procuring the same. Fraud was alleged as one of the defenses, but there was no proof to support that defense. It was substantially abandoned, and appellant now relies wholly on the fact that the certificate was not delivered and is therefore of no effect. We are of the opinion that, under the provisions of § 116 above quoted, where delivery of the certificate is not made a condition of the contract and where no right is reserved to summarily reject the application, the contract was valid without delivery. In the case of Logsdon v. Supreme Lodge etc., 34 Wash. 666, 76 Pac. 292, we said:

"A certificate cannot be said to be issued when it is merely dated and signed by the appellant's officers. It is not issued until it becomes vitalized as the evidence of a binding mutual obligation. It does not become such until it has been delivered to, and accepted by, the member. In that particular

it is analogous to a deed, which does not become a deed until it is delivered, even though that may be long after its date."

That was a case where the member was a new member, and where there was a discretion which could be exercised, and where there was no actual existing contract between the parties. In this case, contractual rights already existed which it was the duty of the appellant to carry out, and no right was reserved for the exercise of a discretion to reject the application summarily.

It follows that the judgment must be affirmed, and it is so ordered.

HADLEY, C. J., RUDKIN, and ROOT, JJ., concur.

FULLERTON, J., dissents.