**TOWN & COUNTRY MUTUAL INSURANCE COMPANY, Appellant (Defendant Below),**

v.

**Curt SAVAGE, d/b/a Curt's Marathon, Appellee (Plaintiff Below),**

**Charles E. Evans, Appellee (Defendant Below).**

**No. 2–880A289.**

Court of Appeals of Indiana, Second District.

June 15, 1981.

Rehearing Denied Aug. 31, 1981.

C. Wendell Martin, Martin & Hartley, Indianapolis, Edward S. Mahoney, Lacy, O'Mahoney, Mahoney, Angel & Jessup, Kokomo, for appellant.

C. Michael Cord, Bayliff, Harrigan, Cord & Maugans, Merrill W. Otterman, Kerwin & Otterman, Kokomo, for appellee Curt Savage, d/b/a Curt's Marathon.

BUCHANAN, Chief Judge.

### CASE SUMMARY

Defendant-appellant Town & Country Mutual Insurance Company appeals from an $8,000 judgment entered against it in favor of Curt Savage, d/b/a Curt's Marathon under color of an insurance policy issued by it to Curt Savage. Savage appeals from denial of pre-judgment interest.

We affirm in part and reverse in part.

### FACTS

The facts most favorable to the judgment are as follows:

On November 18, 1975, Curt Savage (d/b/a Curt's Marathon, hereinafter referred to as Savage) met with Charles Evans (Evans) and Louis "Bud" Robertson (Robertson) to discuss the insurance needs of his service station in Kokomo, Indiana.

Evans was an independent insurance agent who represented a number of companies, including Town & Country Mutual Insurance Company (Town & Country), defendant herein. He had previously dealt with Savage in insurance matters.

Robertson was a field sales manager directly employed by Town & Country. Robertson held himself out to Savage as an employee of Town & Country and took part in the discussion about Savage's insurance needs.

For the purposes of this inquiry, the critical portion of that discussion concerned burglary coverage for the tools and inventories Savage kept at his station. At the time, Savage had $6,000 coverage on his inventory with a carrier other than Town & Country. Evans suggested that he increase that policy to $10,000 or $12,000; the parties settled on $8,000. Savage showed Robertson the burglar alarm and told him that often a guard dog was kept in the station at night.

Robertson asked Savage how much cash he kept in the register, to which Savage replied $250.00.

Robertson participated in the conversation and took notes. He voiced no objections about issuing the policy to the station to either Evans or Savage. Robertson prepared the application for insurance. Neither Savage nor Evans ever saw that form. The application omitted the $8,000 theft coverage which was agreed upon.

A three-year policy taking effect December 1, 1975 was then issued to Savage by Town & Country, but it did not include $8,000 theft coverage.

On February 3, 1977 Savage's station was burglarized, and numerous tools and other items taken. When Savage reported his loss to Evans both were under the impression Savage had $8,000 coverage.[1] Robertson, however, informed Evans that Savage only had $250.00 in theft insurance.[2]

After discussion with Town & Country proved fruitless, Savage filed suit against Town & Country and Evans. Evans filed a cross-complaint against Town & Country seeking indemnity for any amount awarded Savage, and damages for libel and slander to his professional reputation by Town & Country.

Following a bench trial, judgment was entered in favor of Savage in the amount of $8,000 against Town & Country. The trial court held against Evans on his cross-complaint.[3]

### ISSUES

Town & Country presents the following issues for review:

1. Is the evidence sufficient to support the finding that Town & Country was negligent in failing to provide burglary insurance in the amount of $8,000 to Savage?

    (a) Was the requisite agency relationship between either Evans or Robertson and Town & Country established?

    (b) Was there a duty of reasonable conduct applicable to Town & Country's dealings with Savage?

    (c) Did Town & Country act reasonably in responding to Savage's request for insurance?

    (d) Was Savage contributorily negligent in failing to read his policy?

Savage presents the following issue for review:

2. Did the trial court err in refusing to award Savage pre-judgment interest on the judgment amount entered?

### DECISION

*ISSUE ONE*—Is the evidence sufficient to support the finding that Town & Country was negligent in failing to provide burglary insurance in the amount of $8,000 to Savage?

*CONCLUSION*—There was sufficient evidence from which the trial court could conclude that Town & Country was negligent.

■ Trial in this case was had to the bench. If there is conflicting testimony on any of the elements necessary to establish negligence, we cannot re-weigh the evidence. T.R. 52(A). "On appeal of claims

---

1. The evidence indicates that Savage's loss exceeded $8,000. One set of tools worth $6,756.88 was replaced; however, three similar sets were stolen.

2. By his own admission, the scope of the $250.00 coverage reflected a mistake by Robertson: He intended that as insurance for cash on hand, but it was written as contents coverage.

3. Evans does not appeal that determination.

tried by the court without a jury ... the court on appeal shall not set aside the findings or the judgment unless clearly erroneous." *Id. See, e. g., Beech Grove v. Schmith* (1975), 164 Ind.App. 536, 329 N.E.2d 605. An appellate court will not reweigh the evidence nor judge the credibility of the witnesses, *Jones v. State* (1978), Ind., 377 N.E.2d 1349, but will affirm the judgment if there is sufficient evidence to support it *First National Bank of Mishawaka v. Kamm* (1972), 152 Ind.App. 353, 283 N.E.2d 563. If the trial court's resolution of these questions was not clearly erroneous, we have no basis for reversal of the trial court.

With these guidelines in mind, we explore the elements of negligence which Town & Country alleges were insufficiently proven.

(a) Was the requisite agency relationship between either Evans or Robertson and Town & Country established?

*CONCLUSION*—The requisite relationship was established.

■ At the outset, we observe that Town & Country has argued at length about the status of Evans vis-à-vis Town & Country. That argument is irrelevant to our inquiry. We must indulge in every reasonable presumption in favor of the trial court's action. *Stover v. Stover* (1965), 137 Ind.App. 578, 205 N.E.2d 178. There was ample evidence that Robertson, an *employee* of Town & Country, played a vital role in the discussions preceding the issuance of this policy. He took notes while present at Savage's station and prepared the application for the policy. Robertson, undeniably a servant of Town & Country, effectively supplanted Evans as the key representative of the company. There was therefore a factual basis for the trial court's determination that Savage dealt with Town & Country.

Furthermore, even assuming without deciding that Evans was a broker, and was *Savage's* agent, the verdict of the trial court stands. Uncontroverted testimony shows that Evans and Savage both thought that Savage had $8,000 theft coverage. Robertson never spoke to Evans about the non-existence of that coverage until after the loss. Consequently, there was no notice of any problem to Evans which could be imputed to Savage.

In light of the foregoing, the trial court's finding that Evans was an agent of Town & Country is at most harmless error. T.R. 61.

Because there was ample evidence that Savage also dealt with Robertson, an agent of Town & Country, we conclude that the trial court could properly find that Savage did in fact seek theft coverage from Town & Country through its employee, Robertson.

(b) Was there a duty of reasonable conduct applicable to Town & Country's dealings with Savage?

*CONCLUSION*—There was a duty of reasonable care applicable to Town & Country.

■ *Bulla v. Donahue* (1977), Ind.App., 366 N.E.2d 233, addresses the arguments presented in this case. It held that accompanying an undertaking to procure insurance is a duty to exercise reasonable skill, care and diligence, and a corresponding duty to seasonably notify the applicant if the agent is unable to obtain insurance.

Additionally, we agree that

[w]here an insurance agent or broker promises, or gives some affirmative assurance, that he will procure or renew a policy of insurance under circumstances which lull the insured into the belief that such insurance has been effected, the law will impose upon the broker or agent the obligation to perform the duty which he has thus assumed.

3 *Couch on Insurance 2d* § 25:46, p. 352.

This concept has been accepted by Indiana courts:

If untrained or over-zealous agents make negligent or reckless representations as to policy coverage and it can be shown that the company had actual knowledge thereof or that knowledge may be implied from the circumstances of a particular situation, the company must accept the responsibility.

*Vernon Fire & Casualty Insurance Co. v. Thatcher* (1972), 152 Ind.App. 692, 285 N.E.2d 660, 671. *See also, Western & Southern Life Insurance Co. v. Lottes* (1946), 116 Ind.App. 564, 64 N.E.2d 405, reh. denied 116 Ind.App. 578, 64 N.E.2d 805.

■ So Indiana does impose a duty of reasonable care on individuals who represent that they can supply insurance. The state of the law in this regard, coupled with the fact the trial court did not err in finding that Savage dealt with Robertson, an agent of Town & Country, as well as Evans (Issue One (a), supra), leads us to conclude that there was a duty of reasonable care applicable to Town & Country's dealings with Savage.

(c) Did Town & Country act reasonably in responding to Savage's request for insurance?

*CONCLUSION*—Town & Country did not act reasonably.

We are asked here to make a determination that is primarily factual. The trial court found

> that it is more probably true than not true that the defendants did lead plaintiffs to believe that theft coverage was provided in the policy issued to plaintiff, and that defendants were negligent in failing to either see that theft coverage was provided or notify plaintiff that it would not be provided.

*R.* at 111.

■ Because this determination was made on the basis of conflicting evidence, and is not clearly erroneous, we must affirm it. T.R. 52(A); *Jones, supra; Schmith, supra; Kamm, supra; Stover, supra.*

(d) Was Savage contributorily negligent in failing to read his policy?

*CONCLUSION*—Savage was not contributorily negligent.

Again Town & Country presents us with an argument that is ultimately factual, and was resolved adversely to it on the basis of conflicting evidence.

The trial court found, as discussed in Issue One (c), *supra* that Town & Country did not act reasonably in dealing with Savage. Specifically, the court found that Town & Country led Savage to believe that theft coverage had been provided. Now Town & Country argues as a defense to that finding that Savage was contributorily negligent because he failed to read his policy.

The trial court necessarily found that Savage was not contributorily negligent. Consequently, Town & Country is appealing a negative judgment as to it.

■ We cannot say that the evidence as to whether Savage should have read the policy or whether Savage reasonably relied upon the representations made to him by Town & Country's employee (Robertson) was without conflict and that such evidence could only reasonably lead to a conclusion contrary to the one reached by the trial judge. So it was not contrary to Indiana law for the trial court to find that Savage was not contributorily negligent. *Bowman Instrument Corp. v. Allied Research Associates, Inc.* (1979), Ind.App., 392 N.E.2d 825; *Heeter v. Fleming* (1946), 116 Ind.App. 644, 67 N.E.2d 317.

*ISSUE TWO*—Did the trial court err in refusing to award Savage pre-judgment interest on the judgment amount entered?

*CONCLUSION*—The trial court erred in not awarding Savage pre-judgment interest.[4]

---

4. This issue addresses only the question of pre-judgment interest. Interest from the date of judgment is provided for by I.C. 24-4.6-1-101:
   Maximum interest rate.—Interest on judgments for money whenever rendered shall be · from the date of the return of the verdict or finding of the court until the same is satisfied at the rate agreed upon on the original contract sued upon but shall not exceed eight

per cent [8%] per annum even though a higher rate of interest may properly have been charged pursuant to contract prior to judgment, and if there be no contract by the parties, then at the rate of eight per cent [8%] per annum.
*See, Hemstock v. Wood* (1942), 113 Ind.App. 112, 44 N.E.2d 1016, 1019.

There is a statute in Indiana governing allowance of pre-judgment interest. I.C. 24–4.6–1–103 provides:

Interest at the rate of eight percent (8%) per annum *shall* be allowed:

(a) From the date of settlement on money due on *any instrument in writing* which does not specify a rate of interest and which is not covered by IC 1971, 24–4.5 or this article;

(b) And from the date an itemized bill shall have been rendered and payment demanded on an account stated, account closed or for money had and received for the use of another and retained without his consent.

(Emphasis added.)

*United Farm Bureau Family Life Insurance v. Fultz* (1978), Ind.App., 375 N.E.2d 601, held this statute is applicable to actions brought on insurance policies. *See also, Prudential Insurance Co. of America v. Girton* (1938), 105 Ind.App. 52, 12 N.E.2d 379. The statute is couched in mandatory terms, using the word "shall," and subsection (a) requires an "instrument in writing" in order for interest to be allowable.

■ "Where the terms of the contract make the claim ascertainable and the amount of the claim rests upon mere computation, pre-judgment interest computed from the time the principal amount was demanded *or due* is allowable at the permissible statutory rate." *Indiana Telephone Corp. v. Indiana Bell Telephone Co.* (1976), 171 Ind.App. 616, 358 N.E.2d 218, 229. (Emphasis added.) *See also, Independent Five and Ten Cent Store v. Heller* (1920), 189 Ind. 554, 127 N.E. 439; *City of Vincennes v. McCarter* (1968), 142 Ind.App. 493, 293 N.E.2d 76. Pre-judgment interest is available when damages "are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation at the time those damages accrued." *City of Anderson v. Salling Concrete Corp.* (1980), Ind.App., 411 N.E.2d 728, 735, trans. denied April 20, 1981, citing *Rauser v. LTV Electrosystems, Inc.* (7th Cir. 1971), 437 F.2d 800, 805.

We are presented with a writing embodying the $8,000 theft insurance contract in the form of the policy, which includes, under the heading "Section I—Property Coverage" the entry of $8,000 as "Coverage B—Personal Property." Although Town & Country disputes the presence of theft coverage, the *amount* of such insurance is unmistakably manifested on the face of the policy. This would seem to be sufficient as "an instrument in writing."

In this case, uncontroverted evidence establishes that Savage's loss exceeded $8,000. Three sets of tools worth about $6,000 each were stolen. Town & Country has not seen fit to contest the amount of damages awarded. The amount in controversy is thus readily ascertainable by virtue of the agreed limits on the proposed policy.

Town & Country's argument that Savage has waived the option of proceeding under a contract theory is not supported by the record or the pleadings. Savage moved to amend the pleadings to conform to the evidence, including an amendment alleging a contractual basis for his cause of action. When Town & Country objected to that portion of the amendment, the trial court responded: "I think if the evidence supports a contractual theory I have to consider it whether it was in the pleadings or not." (*R.* at 416–17.) That response expresses an intent to grant the motion, and in any event, supports the judgment on a contractual basis.

Even were we to conclude that Savage's recovery rests solely on a negligence theory, he should still be allowed to recover pre-judgment interest. Our courts in considering tortious breach of contract cases have held that all damages directly traceable to the wrong done, and arising without fault of the injured person, are recoverable. *Coy v. Indianapolis Gas Co.* (1897), 146 Ind. 655, 46 N.E. 17, 20. (Tortious failure to supply natural gas.) Plaintiffs are entitled to full recovery of compensatory damages for consequential injuries from defendants' negligence in contract settings. *Indiana Bell Telephone Co., Inc. v. O'Bryan* (1980), Ind.App., 408 N.E.2d 178. (Negligent failure to provide directory assistance listing to business which had contracted for such serv-

ices.) Throughout these cases, the imperative of fully compensating the wronged plaintiff dominates. Courts see to it that the party at fault responds in an amount of damages which will compensate the injured party for injuries attributable to the tortfeasor's acts. *Rondinelli v. Bowden* (1973), 155 Ind.App. 582, 293 N.E.2d 812, 816.

Town & Country does not dispute the extent of Savage's loss. This case is thus similar to *Murray Envelope Corp. v. Kunderd* (1938), 105 Ind.App. 215, 13 N.E.2d 329, in which the court held it reversible error not to grant pre-judgment interest on an undisputed amount of debt.

■ Assuming, arguendo, that the writing on the policy is not sufficient to meet the statutory requirement, the only reason for that non-sufficiency is Town & Country's own negligent failure to include in the policy the theft coverage. Consequently, the absence of such a writing can only be described as a direct result of Town & Country's negligence. It is thus a damage directly traceable to the wrong done which has harmed Savage.

Our conclusion in this regard is consistent with *Fort Wayne Nat'l Bank, Administrator v. Scher*, Ind.App., 419 N.E.2d 1308 (1981). In that case, Judge Garrard traced the development of Indiana law regarding pre-judgment interest, and concluded that it was reversible error not to award interest from the time of loss of an ascertainable amount of money.

In doing so the Third District followed *New York, C. & St. L. Ry. Co. v. Roper* (1911), 176 Ind. 497, 96 N.E. 468, and reversed the trial court, saying, "the court erred in not awarding damages [pre-judgment interest] for the loss of use of the automobile and payroll checks from the time of their conversion. *Indianapolis Machinery Co., Inc. v. Cohen* (1978), Ind.App., 378 N.E.2d 931." *Scher* 419 N.E.2d at 1336.

We might add that equity will consider done what should have been done, and would shudder were the result otherwise under the circumstances. *Rosenbloom v. Hutchins* (1944), 222 Ind. 590, 55 N.E.2d 315; *Randall v. White* (1882), 84 Ind. 509; *Cook v. Miller* (1911), 41 Ind.App. 453, 94

N.E. 783; *Sourwine v. Supreme Lodge Knights of Pythias* (1895), 12 Ind.App. 447, 40 N.E. 646.

Our holding as to pre-judgment interest thus stands on two legs, one the statute (I.C. 24–4.6–1–103), and the other tort and damages case law.

The judgment of the trial court is therefore reversed insofar as it denies Savage pre-judgment interest, and is affirmed in all other respects. This case is remanded to the trial court for further proceedings not inconsistent herewith.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

CHIPMAN, J., (sitting by designation) concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

Notwithstanding *Indiana Telephone Corp. v. Indiana Bell Telephone Co.* (2d Dist. 1976) 171 Ind.App. 661, 358 N.E.2d 218, authored by the writer of this opinion, and *United Farm Bureau Family Life Insurance Co. v. Fultz* (1st Dist. 1978) Ind. App., 375 N.E.2d 601, more recent decisions have persuaded me that allowance of pre-judgment interest under the circumstances present here may not be founded upon I.C. 24–4.6–1–103 (Burns Supp. 1980). That statute, insofar as here pertinent, provides:

"Interest at the rate of eight percent (8%) per annum shall be allowed:

(a) From the date of settlement on money due on any instrument in writing which does not specify a rate of interest and which is not covered by IC 1971, 24–4.5 or this article."

The claim of Savage does not arise by reason of the insurance policy before us. Rather, the claim arises because the instrument did *not* contain the language in writing which would have provided the coverage sought and contemplated. The policy did not cover the loss for which money is now claimed.

Be that as it may, and even if the policy before us were an instrument in writing under which the money is claimed to be due, there was no "settlement" of the mon-

ey due until the amount of the loss was established at trial. Accordingly, I must retract from the unmistakable implication of *Indiana Telephone Corp. v. Indiana Bell Telephone Co., supra,* that an unliquidated claim for money may give rise to pre-judgment interest under the statute.

In my view *Urbanational Developers, Inc. v. Shamrock Engineering, Inc.* (3d Dist. 1978) Ind.App., 372 N.E.2d 742 and the more recent 3rd District opinion, *Fort Wayne National Bank v. Scher* (1981) Ind. App., 419 N.E.2d 1332, relying heavily upon *New York, Chicago & St. Louis Ry. v. Roper* (1911) 176 Ind. 497, 96 N.E. 468, make it clear that the statute is unnecessary, if not redundant, in situations in which pre-judgment interest is necessary to fully compensate the plaintiff for the harm or loss claimed.

I concur because pre-judgment interest here is necessary to fully compensate Savage from the date of his loss but not because the pre-judgment interest is authorized by I.C. 24–4.6–1–103.

In all other respects I concur in the majority opinion.