O'CONNOR ET AL. *v.* OVERALL LAUNDRY, INC., ET AL.

[No. 14,319.   Filed November 23, 1932.   Rehearing denied March 17, 1933.   Transfer denied January 3, 1934.]

*Albert Stump* and *Edward H. Knight,* for appellants.

*Merle N. A. Walker* and *T. C. Bachelor,* for appellees.

KIME, J.—This is an appeal from the action of the Marion Superior Court in setting aside the ruling of the board of zoning appeals of the city of Indianapolis when the cause was brought before that court on a writ of certiorari to review the action of said board.

The error assigned here is the overruling of a motion for a new trial which set out two grounds, viz: (1) The decision is not sustained by sufficient evidence; (2) the decision is contrary to law.

The statute provides any person aggrieved by the action of the board of zoning appeals may present to the circuit or superior court a verified petition setting forth that such decision (of the board) is illegal and specifying the grounds of such illegality. After certain notices are given the court may direct a writ of certiorari to the board ordering a return. The return writ must be verified and concisely set forth such *facts* and *data* as may be pertinent and material to show the grounds of the decision appealed from. Then quoting the statute, "The court may decide and determine the sufficiency of the statements of illegality contained in the petition without further pleadings, and may make its determination and render its judgment with reference to the legality of the decision of the board of zon-

ing appeals on the facts set out in the return to the writ of certiorari; or, if it shall appear to the court that testimony is necessary for the proper disposition of the matter, *it may take evidence thereon to supplement the evidence and facts disclosed by the return to the writ* of ceritorari, but *no such review shall be by trial de novo*. In passing upon the *legality* of the decision of the board of zoning appeals the court may reverse or affirm, wholly or in part, or may modify the decision of the board of zoning appeals brought up for review." (Our italics.) Acts 1929, pp. 27, 29, §10376, Burns Supp. 1929, §11658, Baldwin's Ind. Ann. Stat. 1934.

The appellees, after an adverse decision by the board, filed what they denominated a complaint in the Marion Superior Court. A writ of certiorari was issued directing appellants to make due return thereon which was done. Let us see what may be gathered from *the petition and the return only*.

It appears that the appellee Laura Andrews was the owner of a lot located at Tacoma Ave. and 12th Street —75 ft. on Tacoma and 183 ft. on 12th—there was located on the lot a brick building 40 x 70 ft. housing an overall laundry and a cement block building 40 x 30 ft. housing in one half a dry cleaning plant and in the other half a garage. The appellee, Overall Laundry, Inc., was the lessee of this property and had been when the zoning ordinance of the city of Indianapolis was adopted in 1922. The owner had given the lessee written permission to apply for a variance as is necessary in such cases. The lessee applied to the building commissioner for permission to connect the two buildings by roofing the area of 14 x 30 feet and walling it in for use as an engine room. This was refused and an appeal taken to the board. The notices as required were given. There was filed with the board a statement

signed by fifteen *residents* of the community saying they thought it would be a benefit and not a detriment. There was a petition filed by sixty *resident property owners* of the immediate neighborhood protesting against any action in favor of the appellees. The petition complained of smoke fumes, fire hazards, and sewer clogging and attributed it to the laundry. After hearing a large number of persons and being fully advised in the matter the board denied the appellees' petition or appeal. The appellees then filed what they denominated a petition for rehearing wherein they set out: "That said connecting structure was intended to relieve and eliminate the very conditions against which said persons protested, viz: excessive smoke and offensive odors."

That the connecting structure was designed solely to serve the two buildings or plants already in operation upon said property with the knowledge and consent of said board and as such did not, of itself, constitute a trade, calling, or commercial enterprise, or an offensive or dangerous business; that as an eliminator of the smoke and offensive odors complained of said connecting structure would aid and promote the public welfare, comfort, safety, and morals.

That by reason of the fact that one of the structures so sought to be connected was erected and being used for business at the time of the passage of the zoning ordinance the aforesaid described real estate is permitted to be used for business purposes or any other purpose under its classification as a non-conforming use.

That the proposed cost of the work to be done on these premises does not exceed Five Hundred ($500.00) dollars whereas the assessed valuation of the two structures already erected upon said premises is Ten Thousand ($10,000) dollars; that the proposed connecting

structure is not in any sense a separate building but is strictly an alteration to the building already erected. Section Ten of the zoning ordinance permits an alteration of buildings on property designated as a non-conforming use under the following condition:

"Where the alteration does not exceed an aggregate cost of sixty per cent (60%) of the assessed valuation of the buildings already erected thereon."

That by reason of the matters herein alleged the petitioner's application is not a violation or a variance of any provision of such zoning ordinance.

There was a map filed before the board showing in detail the surrounding property and its use. The board at the next meeting denied the petition for a rehearing, the appellees failing to present any additional evidence.

Before the Marion Superior Court could properly review the action of the board it must necessarily have other facts before it. From the return submitted it does not appear in what use district this property was located neither is the ordinance or the particular sections applicable set out. These would have been proper subjects upon which to have heard additional evidence as the same does not even appear from the verified petition filed asking for the writ.

Other facts presented by the petition for the writ show that the use to which this property was being put was a non-conforming use for that particular use district but even here is not pleaded what constitutes a non-conforming use. That there had been a zoning ordinance adopted by the city council.

That part "specifying the grounds of such illegality" (Acts of 1929) alleged that the board did not hear evidence on costs and assessed valuation. They were here attempting to qualify under Section 10 of the ordinance, although neither the ordinance nor this section had been pleaded. Had the court decided not to hear addi-

tional evidence we are at a loss to understand how this allegation would have availed them anything. That they had shown that a practical difficulty and an unnecessary hardship was inflicted upon them and they had been given no relief by the board and that this was illegal.

From the facts before the court on the petition and the return to the writ the court could have, no doubt, with the additional facts set out above, determined whether or not the action of the board was illegal.

Now that all the facts are before us let us see what power the board had upon a state of facts thus shown with these further facts. It appears that this was a U-1 use district or mainly dwelling house district, and that sections 1, 2, 3, 10, 22, and 23 of the zoning ordinance were admitted in evidence by the reviewing superior court.

The statute (being Acts of 1921, ch. 225, p. 660, §4, as amended by the Acts of 1925, p. 306) that is applicable is as follows: "Such board of zoning appeals shall hear and determine appeals from and review any order, requirement, decision or determination, made by an administrative official or board charged with the enforcement of any ordinance or regulation adopted pursuant to this act, and shall permit and authorize exceptions to and variations from the district regulations in the classes of cases or in particular situations specified in such ordinance, and they shall hear and try all matters referred to them or upon which they are required to pass under any such ordinance of the common council adopted pursuant to this act." Sec. 10375, Burns Ann. St. 1926, §11657, Baldwin's Ind. Ann. Stat. 1934.

From that language we hold that the board of zoning appeals has power to permit and authorize exceptions and variations from the district regulations in the class of cases or the particular situations *specified in the ordinance.* In the instances set

out in the ordinance and in absolutely no other instance has the board any power to "vary."

Our next inquiry is what does the ordinance provide. Section 22 says this: "Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of this ordinance, the board of zoning appeals shall have the power in a specific case to vary any such provision in harmony with its general purpose and intent so that the public health, safety and general welfare may be secured and substantial justice done."

"Sec. 23. District exceptions. The board of zoning appeals may in a specific case, after public notice and hearing and subject to appropriate conditions and safeguards, determine and vary the application of the district regulations herein established in harmony with their general purpose and intent as follows:

(1) Permit the extension of a building or use into a more restricted district immediately adjacent thereto but not more than 50 feet beyond the boundary line of the district in which such building or use is authorized.

(2) Permit the extension of a nonconforming use or building upon the lot occupied by such use or building at the time of passage of this ordinance.

(3) Permit in a district any use or building deemed by the board to be in general keeping with and appropriate to the uses or buildings authorized in such district or existing on neighboring property. (As amended by G. O. 93-1925, Nov. 16, 1925.)

(4) Grant in undeveloped sections of the city temporary and conditional permits for not more than two-year periods for structures and uses that do not conform to the regulations herein prescribed for the district in which they are to be located.

(5) Permit the location in any use district of a telephone exchange, electric substation or similar public

utility, or any use of building for public convenience, safety or welfare, or of a class U7 use, provided such use in such location will, in the judgment of the board of Zoning Appeals, substantially serve the public convenience and welfare and will not substantially and permanently injure the appropriate use of the neighboring property. (As amended by G. O. 93-1925, Nov. 16, 1925.)

(6) Permit in a dwelling house or apartment house district the location on any lot, lots or tract, having an area of not less than 5 acres, or bounded on at least three sides by streets not less than 40 feet in width, any use authorized in a business district, provided such use in such location is so conditioned and restricted as to adequately safeguard the appropriate use of neighboring property. (As amended by G. O. 93-1925, Nov. 16, 1925.)

(7) Permit the erection of a two-story accessory building not to exceed 40 per cent of the required yard area; or

(8) Where a tract of ground consisting of one or more lots within one block, whether separately owned or not, is adjoined on one or more sides by a building or buildings which do not conform to the use or area district regulations of the district in which such lot is located, permit a modification of such use or area district regulations to the extent deemed necessary to admit of any appropriate improvement on such lot, due regard being given to the avoidance of serious injury to neighboring property. (As amended by G. O. 10-1923, Feb. 19, 1923."

Thus we find that clause (2) of Sec. 23 is the only one applicable here.

The appellees most earnestly contend that there is disclosed here practical difficulties or unnecessary hardships. Let us see what courts have had to say about

this. Chief Justice Rugg of the Supreme Judicial Court of Massachusetts uses this persuasive language: "It is manifest from the tenor of the zoning act as a whole, as well as from section 19, that the power of authorizing variations from the general provisions of the statute is designed to be sparingly exercised. It is only in rare instances and under exceptional circumstances that relaxation of the general restrictions established by the statute ought to be permitted. The power granted is only for the relief of specific instances, peculiar in their nature. It does not extend to modifications or changes of essential particulars of the scheme of the zoning act. It does not include immediate or prospective changes in boundary lines of districts. . . . . The chief purpose·of a zoning statute has relation to the public welfare. The protection of health and safety are important factors. The preservation of the property of others in the neighborhood growing out of established restrictions is a matter of importance. These and numerous other considerations must be weighed in passing upon any appeal. 'Practical difficulty' or 'unnecessary hardship' as applied to restrictions upon the bulk of buildings to be erected upon land naturally would be measured from the owner's point of view in dollars and cents. Financial considerations alone, however, cannot govern the action of the board. They are bound to take a broader view than the apparent monetary distress of the owner. Otherwise, there would be no occasion for any zoning law. . . . Whether the proposed building will derogate from the intent and purpose of the zoning act is a question which demands insight, vision, wisdom." *Norcross et al.* v. *Board of Appeal of Building Department of City of Boston* (1926), 255 Mass. 177, 150 N. E. 887, p. 890.

Again in *Prusik et al.* v. *Board of Appeal of Building Department of City of Boston et al.* (1928), 262 Mass.

451, 160 N. E. 312, the learned Chief Justice says, "It is manifest from the general purpose underlying any zoning act, . . . that the power to vary the application of the act is to be exercised sparingly. Exceptional circumstances alone justify relaxation in peculiar cases of the restrictions imposed by the statute. The dominant design of any zoning act is to promote the general welfare. The protection of health and the promotion of safety are salient factors. The stability of the neighborhood and the protection of property of others in the vicinity are important considerations. The financial situation or pecuniary hardship of a single owner affords no adequate ground for putting forth this extraordinary power affecting other property owners as well as the public. The only reason set out in the decision relates to the alleged disappointment of the particular land owner in finding out that her land is not available for business uses, but is just inside a residential zone. This is quite insufficient to constitute 'unnecessary hardship' or to involve 'practical difficulty'." Other cases of like purport are *People ex rel. Stevens et al.* v. *Clark et al.* (1926), 216 App. Div. 351, 215 N. Y. Supp. 190; *People ex rel. Sheldon* v. *Board of Appeals* (1923), 234 N. Y. 484, 138 N. E. 416.

One of the New York courts comments curtly and pointedly as follows: "Apparently the board's contention is that this section gives them power to do whatever they think is right, regardless of the provisions of the statute. But it does not grant any such power. The board cannot wholly disregard the provisions of the statute or of the regulations. It can merely 'vary' them to do 'substantial justice' when the 'strict letter' of the provisions would work hardships." *People ex rel. Cotton* v. *Leo* (1920), 110 Misc. Rep. 519, 184 N. Y. S. 943.

When the city council of Indianapolis zoned the city it was then determined that this was a residential dis-

trict. This laundry was there at that time. The intent of the ordinance was that non-conforming uses should not be encouraged to remain in such districts.. They were hedged about with restrictions to convey to them that their presence in that district was undesirable. The enlargement of the existing buildings was prohibited. The reconstruction or structural alteration of the existing building was limited.

We will digress to say that appellees' contention that they come within this clause is wholly untenable. The roofing over and walling in of a new area is not a reconstruction or structural alteration.

The board here, after having the facts before it, wisely determined that it would be for the best interests of the district not to authorize the variation and that there was shown no practical difficulty or unnecessary hardship which should cause it to make a variation. It is not a hardship or practical difficulty within the meaning of the statute when a corporation's business has outgrown its building to refuse to allow them to add to their present building. It would seem more of a hardship to continue in cramped quarters. But the public health, safety, and general welfare of the particular district or community must be the pole star for the guidance of the board and if in their discretion they deem it best to take certain action within the narrow limits allowed them by the ordinance and they have followed the course thereby laid down only a plain showing of an abuse of discretion would be illegal.

The appellant contends that the Marion Superior Court exceeded its authority in conducting a trial *de novo*. With this there can be no argument. Here the court heard witnesses and allowed exhibits to be introduced when this same matter

was before it in the petition for the writ and the return thereto. This was clearly unnecessary and an abuse of discretion if the court was proceeding under the guise of obtaining testimony necessary for the proper disposition of this matter. The statute expressly says that "no such review shall be had by trial *de novo*."

Certiorari is an old device of the common law. Its office was to demand of some inferior court or body the record of the proceedings so that the court could determine whether or not the acts of the lower tribunal were legal and thus keep the lower tribunal within its proper jurisdiction.

Under the old common law the writ brought before the court the record of the proceedings of an inferior tribunal for inspection and the only judgment that could be rendered was to quash the writ or to quash the record of the proceedings. The only proper inquiry being whether the inferior tribunal had jurisdiction and had followed the form of proceedings legally applicable in such cases. 11 C. J. p. 88; *People ex rel. Maloney* v. *Lindblom et al.* (1899), 182 Ill. 241, 55 N. E. 358.

The statute here seems to add to this in that it enables the reviewing court to hear evidence to aid it where that may be deemed necessary and by giving to the reviewing court the authority in passing upon the legality of the decision to reverse or affirm wholly or in part or to modify the decision.

In the vast majority of cases it will only be necessary to affirm or reverse. However, we can see that occasionally justice might be more speedily rendered, if, in passing upon the *legality of the decision,* the same could be modified slightly. The court should be extremely careful in attempting to modify the decision to see that they do not thus pass upon the merits. If the decision is not contrary to law and the proceedings

before the board have followed all the steps laid down by the statutes and ordinance, the decision of the board should be affirmed. If the proceedings are illegal, or if the decision of the board is contrary to làw, that decision should be reversed. Cases of modification must be limited to each particular state of facts, and a general rule cannot be laid down. This is purely a statutory proceeding, and the court has just such power as is given it by that statute.

An instance of a proper case for the use of a writ of certiorari is disclosed in the opinion of this court in *City of Indianapolis* v. *Ostrom Realty Company* (1932), 95 Ind. App. 376, 176 N. E. 246. There the board of zoning appeals acted illegally in attempting by a motion of one of its members to do what could only be done by a petition for a variance or an appeal from the action of the building commissioner. Then, upon a petition for a writ and the return thereto, the reviewing court could readily see that the procedure laid down had not been followed.

Concluding we will say the discretion is in the board of zoning appeals, the prescribed methods were followed, the court exceeded its authority in conducting a trial *de novo*, and erred in its decision.

Judgment of the Marion Superior Court is hereby reversed with instructions to vacate the judgment heretofore entered, and to render a judgment affirming the decision of the board of zoning appeals.

Lockyear, J., concurs in result with opinion.

Neal, J., dissents.