ARTHUR M. CHIZUM ET AL. v. ELKHART COUNTY
PLAN COMMISSION

[No. 569A88. Filed November 19, 1970.]

Robert A. Pfaff, Richard E. Steinbronn, Thornburg, Mc-Gill, Deahl, Harman, Carey & Murray, of Elkhart, for appellants.

Robert H. Hepler, of Goshen, Frank E. Spencer, of Indianapolis, for appellee.

WHITE, J.—This is an appeal from a decree permanently enjoining an allegedly illegal expansion of a legal non-conforming use of land. Appellee, the plan commission, brought the action against the appellants who are the owners of land at Osceola in Elkhart County. Their residence, in which an insurance agency is operated, is located thereon. The owners purchased the land in 1954. At that time there was an airport on the land which had been in use since 1947, and was still in use at the time of trial. The owners have farmed most of the land since 1955 and in 1959, they constructed a drag strip on which they have held drag races since that time. Until February 1, 1960, there was no zoning ordinance in effect as to this real estate. Since that time the county zoning ordinance has included most of the land (all that here is in question) in a "R-1" residential use district. The drag strip thus became and has remained, a legal non-conforming use.

In 1967, poles and lights were erected along the drag strip for the first time and night racing thus first became possible. The principal controversy is whether the erection of those poles and lights in the R-1 district constitutes an illegal expansion of a non-conforming use. To the extent that the answer to that question may depend on whether the purpose and intended use of those lights is to make night racing

possible, it may be said that the evidence most favorable to appellee-plan commission is that such is the intended use.

An ancillary question is whether cattle feeding carried on in a more remote part of the land until after the drag strip lighting controversy arose can legally be moved to a new area, still in the R-1 district, but closer to more homes.

It is conceded that drag racing is not legal in a R-1 district except as a pre-existing non-conforming use. The remaining pertinent portions of the ordinance involved in the drag strip lighting controversy are as follows:

## "ARTICLE IV
## NON-CONFORMING USE SPECIFICATIONS

SECTION 1.

    a. Any lawfully established use of a building or land, established prior to the effective date of this ordinance, or of amendments thereto, that does not conform to the use regulations for the district in which it is located shall be deemed to be a legal non-conforming use and may be continued, except as otherwise provided herein.

    b. Any legal non-conforming building or structure may be continued in use provided there is no physical change other than necessary maintenance and repair, except as otherwise permitted herein.

    c. Any building for which a permit has been lawfully granted prior to the effective date of this ordinance or of amendments hereto, may be completed in accordance with the approved plan, provided construction is started within six months after the date of the permit and diligently prosecuted to completion. Such building shall thereafter be deemed a lawfully established building.

* * *

SECTION 1.

CHANGE OF USE.

    a. A non-conforming use of a building or structure, or part thereof, may be changed to a use of the same or, of a more restricted character, but may not thereafter be changed to any less restricted use.

* * *

SECTION 5.

REPAIRS AND ALTERATIONS.

    a. Normal maintenance of a building or other structure containing a non-conforming use is permitted, including necessary non-structural repairs and incidental alterations which do not extend or intensify the non-conforming use.

    b. No structural alterations shall be made in a building or other structure containing a non-conforming use, except in the following situations:

        1. When the alteration is required by law.

        2. When the alteration will actually result in the eliminating the non-conforming use.

        3. When a building containing residential non-conforming uses may be altered in any way to improve livability, provided no structural alteration shall be made which would increase the number of dwelling units or the bulk of the building.

The permanent injunction which this appeal seeks to reverse reads as follows:

"IT IS THEREFORE ADJUDGED, ORDERED AND DECREED as follows:

"1. That the defendants and each of them are hereby permanently enjoined from using the hereinafter described real estate, or from permitting the use of the said real estate for racing between 45 minutes after sunset and 45 minutes before sunrise of any day, which real estate is more particularly described as follows: [Description omitted.]

"2. That the defendants and each of them are hereby ordered to cease and desist from using the poles and lights erected on said premises in August, 1967 and to remove said poles, lights, appurtenances thereto and wires from said premises within 60 days.

"3. That the defendants and each of them are hereby ordered to immediately remove the three trailer trucks from their location proximate to Indiana Avenue on the north edge of the above described premises and place them within the fenced non-conforming area approximately 200 feet by parallel lines along the south side of the above described real estate and to cease and desist feeding livestock from trailers, trucks, buildings or other structures outside of said area.

'And the Court further orders that the costs herein in the sum of Nineteen ($19.00) dollars be assessed to the Defendants.' "

Appellant argues that the poles and lights ordered removed are "new structures" and that the ordinance does not prohibit new structures on land devoted to a non-conforming use; that only "structural alterations . . . in a building or other structure containing a non-conforming use" are prohibited; not new structures. Appellee points to evidence supporting the contrary argument that the lights are an integral part of the track and constitute a structural alteration in the track. At best, this is a mixed question of law and fact which has been impliedly resolved against the land owners by the judgment of the trial court.

As to the expansion of use to include night-time racing, the owners cite the case of *Green* v. *Garrett* (1949), 192 Md. 52, 63 A2d 326, 330, in which the Maryland court held that the installation of flood lights and introduction of night baseball in a stadium in a residential zone was not an expansion of the non-conforming use. While that case may well be distinguished as appellee so cogently argues, we see no necessity to distinguish it. It is not binding precedent so far as Indiana courts are concerned. There was sufficient evidence before the trial court from which it could have found that nighttime drag racing is a different use than daytime drag racing. The land was not used for nighttime drag racing prior to enactment of the zoning ordinance and, therefore, it is not a legal non-conforming use.

The matter of relocation of the livestock feeding presents a different question. The "permitted uses" in a R-1 district include, "Agricultural uses of all types except the raising of livestock and poultry." Thus farming generally on the land in question is not a non-conforming use. Only the livestock feeding is a non-conforming use. All other farming operations are conforming uses—permitted uses.

There is no contention that, prior to the effective date of the zoning ordinance, livestock feeding had been carried on in any other part of the land except the area to which the permanent injunction ordered it returned and confined. It was a legal non-conforming use in that area only. Appellants' argument that farming is a legal non-conforming use of all the land not devoted to the drag strip, airport, etc., and that livestock feeding is a part of that non-conforming use is a misreading of the ordinance. The order to confine this non-conforming use to the area in which it is legal because of use there prior to enactment of the ordinance is sustained by the evidence and the provisions of the ordinance.

Finding no error, the judgment of the trial court is, in all things,

Affirmed.

Hoffman, P.J., and Sharp, J. concur.

Pfaff, J. not participating.

NOTE.—Reported in 263 N. E. 2d 654.