CITY OF BEECH GROVE AND ROBERT R. FLETCHER, BUILDING COMMISSIONER OF CITY OF BEECH GROVE v. PAUL SCHMITH AND STATE OF INDIANA, EX REL. RALPH C. SINGER, DIRECTOR OF PUBLIC HEALTH, THE HEALTH & HOSPITAL CORPORATION OF MARION COUNTY, INDIANA AND METROPOLITAN DEVELOP-MENT COMMISSION OF MARION COUNTY, DIVISION OF PLANNING AND ZONING.

[No. 2-673A141. Filed June 19, 1975.]

*Richard L. Brown, Howard M. Dodd, Butler, Brown &
Hahn,* of Indianapolis, for appellant.

*Henry M. Coombs, Burnett Caudill, Coombs, Lively & Bo-
gard,* of Indianapolis, for appellee Schmith, *Jay M.
Brodey, Harrison, Moberly & Gaston,* of Indianapolis, for appellee
State of Indiana ex rel. Ralph C. Singer, etc., *Frank Case,*
of Indianapolis, for appellee Metropolitan Development Com-
mission.

## CASE SUMMARY

BUCHANAN, J.—Defendants-Appellants City of Beech Grove
and Robert R. Fletcher, Building Commissioner of the City of
Beech Grove (Beech Grove), appeal from an adverse judgment
recognizing the existence of a valid nonconforming apartment
use exempt from zoning requirements of certain real estate
owned by Defendant-Appellee Paul Schmith (Schmith), and
that Schmith's proposed renovations would not violate the
established nonconforming use.

We affirm.

## FACTS

The evidence and facts presented at trial most favorable to
Schmith and the trial court's judgment are as follows:

Schmith purchased the property in dispute, located at 52
South Seventh Avenue, Beech Grove, Indiana, on October
22, 1970, and unsuccessfully sought to obtain a building permit
to improve and maintain the property in compliance with
the provisions of the ordinances of the Health & Hospital
Corporation of Marion County (Health Code).

On January 31, 1972, Plaintiff-Appellee State of Indiana ex rel Ralph C. Singer, Director of Public Health, (Singer) commenced this action against Schmith for Health Code violations. Schmith cross-claimed against Beech Grove, alleging that he had taken all appropriate steps to obtain a building permit and that Beech Grove had wrongfully refused his application. Subsequently Beech Grove joined Metropolitan Development Commission of Marion County, Indiana, Division of Planning and Zoning (Commission), as party defendant to Schmith's cross-complaint.

At the court trial on March 7, 1973, it was stipulated that the original Beech Grove zoning ordinance, effective March 16, 1951, designated Schmith's property R-1 (single family dwelling units only), and that as of the filing of the action the property was zoned D-5 (single family dwelling units only) by the Department of Metropolitan Development Commission, and that Section 1, Paragraph A of the City-County Ordinance 39, (as it appears of record) provides:

"That within Marion County, Indiana, no structure shall be located, erected, altered or repaired, except that repairs or alterations which do not change the height, size or lateral bulk of the structure shall be exempt from the requirements of this ordinance unless the use, character and location of the structure are in conformity with the provision of the applicable zoning ordinance."

A Mrs. Raymond Eyre testified that she owned the property from 1950 until about 1968, using it as a home for wayward girls. Following her purchase, she remodeled the interior of the building to include four kitchen facilities and two bathrooms, housing generally from four to six girls during her period of ownership.

In 1968 Mr. Elmer Allen purchased the property from Mrs. Eyre and replaced the existing roof and porch. Mr. Allen used the building to accommodate up to four families until 1970, when it was purchased by Schmith.

As evidenced by the plans submitted at trial, Schmith's intention is to renovate the interior of the building, rearrange certain rooms, and add two more bathroom facilities.

On April 16, 1973, the trial court held that the property qualified as a valid nonconforming use, having been used for apartment purposes from the 1930's until Schmith's purchase in 1970. Finding No. 10 concluded:

"10. That by the preponderance of the evidence in this case, it has been shown that the aforesaid real estate and premises located at 52 South 7th Avenue, Beech Grove, Indiana, were used as a dwelling for apartment purposes beginning sometime prior to 1935, and were continuously so used prior to March 16, 1951, being the effective date of the Code of the City of Beech Grove and the R-1 Zoning Requirements, and have been continuously so used to the present time, and therefore, said use preceded the enactment of the applicable Beech Grove and Marion County Zoning Ordinances, and said real estate is thereby exempt from said Zoning Requirements as being within the Grandfather Clause."

Accordingly, judgment was rendered for Singer as against Schmith on the original complaint and for Schmith as against Beech Grove on the cross-complaint. Only Beech Grove appeals.

## ISSUES

ISSUE ONE. Was sufficient evidence presented to support the trial court's judgment that Schmith established a nonconforming use for apartment purposes and that his proposed changes did not extinguish it?

ISSUE TWO. Did the sustaining of an objection to a question asked of Schmith by the Commission during cross-examination effectively deny Beech Grove the right to cross-examine Schmith regarding the issue of nonconforming use?

As to ISSUE ONE, Beech Grove contends that a nonconforming use of the property was not established at trial in that no specific evidence was presented as to the use of the property on March 16, 1951, the effective date of the Beech Grove Zoning Ordinance. Assuming, however, that the trial court was correct in holding that a valid nonconforming use

was proven, Beech Grove asserts that its nature was that of a rooming house and that the evidence presented by Schmith explicitly showed that his proposed changes would alter the building to accommodate four apartments, thus amounting to a violation of the established nonconforming use.

In response, Schmith states the reverse—that the trial court had sufficient evidence to find: (1) that a nonconforming use consisting of a "dwelling for apartment purposes" (Finding No. 10, *supra*) had been established on March 16, 1951; and (2) that Schmith's proposed renovations would not alter the use of the property as to violate its nonconforming character.

As to ISSUE TWO, the dispute arose during the cross-examination of Schmith *by the Commission* at which time the following question was asked:

"Any time prior to the time that you purchased this piece of real estate, did you consult with persons or have consultations concerning the map or look at the maps of Beech Grove?"

Objection to this question was promptly sustained by the trial court and without further discussion by either side, the witness was excused.

Beech Grove contends that although it did cross-examine Schmith, no cross-examination was permitted on the subject of nonconforming use. Since this was the deciding issue on the case, the trial court's exclusionary ruling was clearly an abuse of discretion, and thus reversible error.

In response, Schmith first contends that the record reveals that Appellants covered all the necessary elements to determine whether an existing and continuing nonconforming use had been established. Furthermore, Commission's question was clearly irrelevant and immaterial inasmuch as metropolitan zoning maps do not specifically designate those properties within the Grandfather Clause.

## DECISION

ISSUE ONE

CONCLUSION—It is our opinion that the evidence was sufficient to support the trial court's judgment that Schmith established a nonconforming use "for apartment purposes" and continuously maintained that use so as to be exempt from zoning requirements.

The essential inquiry in this appeal is twofold: (1) to determine if the evidence most favorable to Schmith is sufficient to sustain the trial court's judgment that he established a valid nonconforming use of the property for apartment purposes on March 16, 1951; and (2) if he did so, are proposed renovations such as to destroy the character of the nonconforming use?

The usual appellate considerations guide us in reviewing a trial court judgment challenged as being based on insufficient evidence. Not only do we refuse to weigh the evidence and view it most favorable to the judgment, but we are mindful of Ind. Rules of Procedure, Trial Rule 52 (A), which provides:

". . . , the court on appeal shall not set aside the findings or judgment unless *clearly erroneous, . . .*" (Emphasis added.)

And we will not reverse a judgment unless the evidence is uncontradicted and will support no reasonable inference in the trial court's favor. *See: Pepka* v. *Branch* (1973), 155 Ind. App. 637, 294 N.E.2d 141; *Hacker* v. *Dan Young Chevrolet, Inc.* (1973), 159 Ind. App. 28, 304 N.E.2d 552; *First National Bank of Mishawaka* v. *Kamm* (1972), 152 Ind. App. 353, 283 N.E.2d 563; *Hyatt* v. *Yergin* (1972), 152 Ind. App. 497, 284 N.E.2d 834; Ind. Rules of Procedure, Appellate Rule 15 (M).

As to our first inquiry, Beech Grove properly points to Indiana law requiring a nonconforming use to be in existence on the date the relevant zoning ordinance went into effect; and it is undisputed that a use merely shown to have existed

at some time prior to that date is insufficient to establish a valid nonconforming use. *See Ashley* v. *City of Bedford* (1974), 160 Ind. App. 634, 312 N.E.2d 863. However, there was direct testimony at trial by both Schmith and Mrs. Raymond Eyre, the owner of the property on the date in question, that on March 16, 1951, the effective date of the Beech Grove Zoning Ordinance, the property was used as a multiple family dwelling, a use not conforming to the R-1 zoning classification.[1]

Thus, there was evidence that Schmith's nonconforming use assumed the character of a multi-family dwelling use with kitchen and bathroom facilities for more than one family, referred to by the trial court as "a dwelling for apartment purposes" (and continuously maintained as such). As to the changing character of what is an "apartment", an Illinois court said:

> "[T]he testimony of the witnesses, although conflicting, indicates that the premises were divided into at least three and possibly five separate apartments consisting of from two to four rooms each, and were occupied by distinct family units. These apartments contained a sink, stove and ice box, and some of the tenants provided their own furnishings. Although two apartments may have shared a bath, and a room of one apartment was across a public hallway, such circumstances merely bore upon the primitive nature of the facilities, rather than on the issue of whether it was an apartment." *People* v. *Morris* (1948), 334 Ill. App. 557, 79 N.E.2d 839, 842-843.

So we reach the second part of the inquiry which is to determine if Schmith's proposed rearrangement of rooms and the addition of two bathrooms destroys his existing nonconforming use.

The law as to the extent of change required to extinguish a nonconforming use is unsettled. Generally courts discuss the problem in terms of the nature, extent, and probable effect of a proposed change . . . employing such phrases as "a similar use", "a minor, immaterial or insignificant change",

---

1. In addition, the classification of the property as nine apartments in a 1942 Beech Grove City Directory lends further weight to both Mrs. Eyre's testimony and the trial court's finding.

"a substantial and material alteration", and "a difference in kind". *See* Annot., 87 A.L.R.2d 4 (1963), pp. 14-19.

The legislative policy embodied in the appropriate zoning regulation is important in determining the extent and character of permissible change. Certain key factors are often referred to, such as: (1) the time, space and volume of the proposed change; (2) its possible effect upon the owners or occupants of neighboring property or upon the public; and (3) whether the proposed alteration is in conformity with a police, building or other regulation. *See* Annot., 87 A.L.R.2d, *supra,* pp. 15 and 71. *See also, New London* v. *Leskiewicz* (1970), 110 N.H. 462, 272 A.2d 856, 860. An additional factor is whether the nonconformity is in the character of the structure itself apart from the use, or in the character of the use apart from the structure. *See* Annot., 87 A.L.R.2d, *supra,* p. 99, citing *Fidelity Trust Company* v. *Downing* (1946), 24 Ind. 457, 68 N.E.2d 789.

Repairs and additions of facilities have been held by some jurisdictions to violate an established nonconforming use:

*Rice* v. *Zoning Board of Appeals* (1937), 122 Conn. 435, 190 A. 257 (proposed change from school dormitory to apartment house held not permissible) ;

*Bd. of Zoning Adjustments* v. *Boykin* (1957), 265 Ala. 504, 92 So.2d 906 (proposed installation of additional bathrooms and separate heating, lighting and water systems and additional alterations held not permissible under applicable zoning ordinance) ; Annot., 87 A.L.R.2d 4, § 14.

However, other jurisdictions have upheld such alterations as permissible extensions of an existing nonconforming use. *See;*

*Singh Sukthankar* v. *Hearing Board of Radnor Township* (1971), 2 Pa. C. 489, 280 A.2d 467 (alteration of carriage house to a dwelling house held permissible) ;

*In re Heidorn's Appeal* (1963), 412 Pa. 570, 195 A.2d 349 (removal of unsightly overhang and underfoot stoop from front of residence and replacement with 18-foot-wide aluminum awning and concrete slab held reasonable extension of nonconforming use) ;

*Crawford* v. *Building Inspector of Barnstable* (1969), 356 Mass. 174, 248 N.E.2d 488 (enclosure of outside stairs and blacktopping of hotel's parking area held permissible changes in existing structure) ;

*State* v. *Wagner* (1963), 81 N.J. Super. 206, 195 A.2d 224 (mere increase in number of tenants in one apartment of large house even though considerable held permissible increase in degree or intensity of use and not substantial enlargement or extension) ;

*Schneider* v. *Bd. of Appeals* (1949), 402 Ill. 536, 84 N.E.2d 428 (interior alterations to apartment house changing from five to ten apartments held permissible extension) ;

*Home Fuel Oil Co.* v. *Bd. of Adjustment* (1949), 5 N.J. Super. 63, 68 A.2d 412 (relocation of doors and installation of modern toilet facilities in fuel oil storage area held not unlawful extension of nonconforming use) ;

*People* v. *Morris, supra* (addition of two-story sleeping porch, enclosing two open porches, raising of roof, and additional changes to apartment building held permissible) ; Annot., 87 A.L.R.2d 4, § 14.

Drawing conclusions from the cases is dangerous because the zoning regulations governing nonconforming uses vary widely from jurisdiction to jurisdiction.

In Indiana, we find two cases solely devoted to the subject of extinguishment of a nonconforming use.

The most recent case is *Chizum* v. *Elkhart Co. Plan Comm.* (1970), 147 Ind. App. 691, 263 N.E.2d 654, in which the owner of property located in a residential area had used it for daytime drag racing and proposed to change the use to nighttime drag racing, necessitating the erection of poles and lights along the drag strip for the first time. In holding that nighttime drag racing constituted a different use, Judge White speaking for the Court interpreted a zoning ordinance regulating nonconforming uses which specifically limited any change of use to a more restricted use and to normal repairs and alterations, . . . "provided there is no physical change" . . . a stricter ordinance than the one with which we are concerned.

Previously, in 1946, the Supreme Court had decided *Fidelity Trust Co.* v. *Downing* (1946), 224 Ind. 457, 68 N.E.2d 789.

A refreshment stand located in a dwelling house district was the nonconforming use with which the owner wished to continue after it had collapsed due to its dilapidated condition. The ordinance relating to nonconforming uses in this instance provided for their continuance but that structures could not be reconstructed or structurally altered to an extent exceeding in aggregate cost during any ten-year period sixty percent of its assessed valuation, but that such a building fully or partially destroyed by fire, explosion or act of God could be restored. In denying the landowner the right to rebuild, the court rested its decision solely on that part of the ordinance which allowed restoration only in the event of fire, explosion, acts of God, etc., saying that a "new building would not be a reconstruction of the old building, but would be an entirely new improvement".

Both of these cases are distinguishable as to the applicable zoning ordinance and the nature and extent of the proposed changes. The only ordinance before us which the parties apparently treat as governing nonconforming uses is City-County (Marion) Council Ordinance 39, which prohibits alterations and repairs that would change the "height, size or lateral bulk of the structure"; and Schmith's changes would do none of these.

The changes proposed by Schmith consist of renovation by rearranging the interior alignment of rooms and adding two more bathroom facilities (of which there were already two). Such interior changes could hardly be considered a different use as in the sense of a change from daytime to nighttime drag racing per *Chizum*. Schmith's structure had been used as a multiple family dwelling for approximately forty years and whether denominated "rooming house", "multiple dwelling", or "apartment use", it remained a unified structure devoted to the housing of unrelated persons with no change in its height, size or lateral bulk.

Thus, sufficient evidence did exist to support the court's findings and judgment which were neither contrary to the evidence or contrary to law as Beech Grove maintains.

ISSUE TWO

CONCLUSION—It is our opinion that the alleged error resulting from limitation on the Commission's cross-examination is not available to Beech Grove on appeal.

Beech Grove, a hopeful appellant, and the Commission, a passive appellee, joined in a motion to correct errors which did assign as error limitation on the Commission's right to cross-examine Schmith. But thereafter the Commission chose not to join in the appeal as an appellant or to file cross errors, leaving Beech Grove in the unhappy position of having itself cross-examined Schmith (as the Record shows) on all material aspects of the case, and at the same time seeking to vicariously raise an error to which it was not privy. Nor does Beech Grove demonstrate how it was harmed or injured thereby.

A fundamental rule of the appellate process is that:

> "No party can take advantage of an error committed by a court except the one against whom it was committed." *Johnson, Adm.* v. *Johnson* (1901), 156 Ind. 592, 595, 60 N.E. 451.

Also:

> "An appellant can only present for review, on appeal, the rulings against himself to which he reserved exceptions, and not rulings against others." *In re Gilbert* (1924), 195 Ind. 278, 279, 144 N.E. 551. *See also, Greek Orthodox Church* v. *Alexander* (1927), 199 Ind. 528, 537, 156 N.E. 545.

This principle has been followed as recently as February of this year in *Burns Construction, Inc.* v. *Valley Concrete* (1975), 163 Ind. App. 154, 322 N.E.2d 404, wherein one defendant (contractor) assigned as error on appeal the trial court's dismissal of the original complaint as to its codefendant (franchisor). In disposing of this non-reviewable error, Judge Garrard on behalf of the Third District said:

> "This assignment fails to present a reviewable error. No motion to correct errors or cross-appeal was filed by the supplier [plaintiff] contesting the dismissal. The case was tried upon the supplier's complaint and the answers thereto. The contractor filed no cross-complaint asserting

any claim against the franchisor for contribution or indemnification, and the evidence submitted at trial disclosed no such right.

"Accordingly, any error in the court's ruling [dismissing the complaint against franchisor] is harmless as to the contractor because it does not affect the contractor's rights. 322 N.E.2d at 405.

*See also:*

Ind. Rules of Procedure, Trial Rule 61 (Harmless Error) ; *Anderson* v. *Huggins* (1950), 120 Ind. App. 169, 174, 89 N.E.2d 453.

So Beech Grove's attempted assignment of error of an exclusionary ruling against the Commission does not present a reviewable question for our consideration.

The decision of the trial court is therefore affirmed.

Sullivan, P.J. and White, J., concur.

NOTE.—Reported at 329 N.E.2d 605.