**Dick A. MILLER and Irene Miller, Appellants,**

v.

**The BOARD OF ZONING APPEALS OF the CITY OF ROCHESTER, FULTON COUNTY, Indiana,**

**and**

**Thermogas, Inc., Appellees.**

**No. 3–978A219.**

Court of Appeals of Indiana, Third District.

Dec. 20, 1979.

Rehearing Denied Feb. 5, 1980.

Frederick E. Rakestraw, Brown, Brown & Rakestraw, Rochester, for appellants.

Richard L. Kehoe, Jr., Rochester, for appellee Board of Zoning Appeals of City of Rochester.

Douglas B. Morton, Peterson & Morton, Rochester, Karl J. Stipher, Ralph F. Hall, Baker & Daniels, Indianapolis, for appellee Thermogas, Inc.

GARRARD, Presiding Judge.

The Board of Zoning Appeals of the City of Rochester granted a variance to Thermogas, Inc. to permit it to conduct a liquid fertilizer sales and distribution business in conjunction with its existing liquid petroleum storage and delivery business. In granting the variance the Board imposed conditions to control potential problems concerning noise, dust and traffic.

Appellants (Miller) reside on a tract of real estate adjacent to and east of the property owned by Thermogas. They petitioned the circuit court for certiorari, and now appeal from the court's judgment sustaining the Board. Their arguments on appeal address the sole question of whether unnecessary hardship was shown to exist.

 The appeal is governed by these precepts: The determination of whether there is such unnecessary hardship as to justify the grant of a variance is a question of fact for the Board which depends upon an assessment of all relevant factors taken together. *Nelson v. Bd. of Zoning Appeals* (1959), 240 Ind. 212, 162 N.E.2d 449; *City of East Chicago v. Sinclair Refining Co.* (1953), 232 Ind. 295, 111 N.E.2d 459. Our appellate review is limited to a determination of whether the Board's action was illegal. We may not reverse if there is evidence of probative value to support the decision. *Nelson, supra; Bd. of Zoning Appeals v. Reed* (1973), 157 Ind.App. 540, 301 N.E.2d 231.

The circumstances in the present case disclose that Thermogas has operated its business on the tract in question since the early 1960's. In 1970 an area consisting of several lots on the north and south sides of State Road 14 (including the Thermogas land) was zoned as R–1, residential. Thermogas is at the west end of this R–1 area. There are no improvements upon nearby real estate to the west or north. Approximately one block east of Thermogas in the R–1 area is another liquid petroleum business.

At the hearing before the Board, Thermogas presented evidence to establish that its petroleum business was compatible with the fertilizer business and that petroleum operations alone did not yield a reasonable rate of return. A planning commissioner testified that the property should not be zoned "residential" because of its existing structures (storage tanks, pumping facilities and related buildings) and the nature of zoning in adjoining areas.

Miller relies upon *Light Co., Inc. v. Houghton* (1967), 141 Ind.App. 93, 226 N.E.2d 341 and similar cases to urge that economic considerations cannot control the granting or denial of variances. We do not disagree with those cases, or with the further explanation advanced therein:

> "The determination of the existence of an unnecessary hardship is governed by all the relevant factors which, when taken together, indicate that the property cannot reasonably be put to a conforming use because of limitations imposed upon it by the ordinance. It must also be shown that the land involved cannot yield a reasonable return if used only for the allowed zoned purpose, and that the use authorized by the variance will not alter the essential character of the locality."

226 N.E.2d 344.

It is at this juncture that a critical flaw emerges in Miller's effort to demonstrate error. Most of the decisions concerning variances, and consequently the language employed by the courts, deal with whether the property can reasonably be used *in conformity with the requirements of the zone in which it is situated*. That is to say, the question would be whether *Thermogas* could demonstrate unnecessary hardship if it were required to use its tract for the residential purposes provided in R–1 zones by the Rochester zoning ordinance. But that was not the issue. Apart from the question of whether Thermogas should be permitted to sell liquid fertilizer at this

location, it was entitled to continue its petroleum business as a non-conforming use.[1]

It appears to us that in this context the questions of reasonableness and hardship must in large part depend upon the rights afforded non-conforming uses under the ordinance. *Cf. Jacobs v. Mishawaka Bd. Zoning Appeals* (1979), Ind.App., 395 N.E.2d 834.

 Millers have not, however, on appeal or at any prior point in the proceedings made any argument or showing that the Board's action was not sustained by the evidence or was contrary to law *once* Thermogas' rights to its non-conforming use under the ordinance were taken into consideration. Thermogas, of course, was entitled to such consideration, and the Board appears to have afforded it.[2]

We must therefore affirm the judgment since appellants have wholly failed to demonstrate reversible error.

Affirmed.

HOFFMAN, J., concurs.

STATON, J., dissents and files separate opinion.

STATON, Judge, dissenting.

I dissent. There is no evidence to support the Rochester Board of Zoning Appeals' determination that Thermogas, Inc., endures the "unnecessary hardship" which is a statutory prerequisite to obtaining a variance. IC 1971, 18–7–5–82, Ind.Ann.Stat. § 53–969 (Burns Code Ed.).[1] The Majority's reliance on the existing nonconforming use enjoyed

by Thermogas to justify the variance grant contravenes the well-recognized principle that the expansion or enlargement of nonconforming uses subverts the ultimate purposes of zoning. *Jacobs v. Mishawaka Bd. of Zon. App.* (1979), Ind.App., 395 N.E.2d 834, 836.

Since the early 1960's, Thermogas has operated a liquid petroleum storage and delivery business on its property in Rochester, Indiana. In 1970, the City rezoned the property owned by Thermogas, as well as adjacent tracts, for residential use only. At that point, the existing petroleum operation became what, in terms of zoning law, is known as a "nonconforming use."

The phrase "nonconforming use" describes a constitutionally-based exemption from municipally-imposed property use restrictions. While a municipality has the police power to restrict the use of property located within its jurisdiction, it cannot infringe upon a landowner's *vested* property rights; to do so would constitute an unconstitutional "taking" of property without due process of law. *Jacobs v. Mishawaka Bd. of Zon. App., supra,* at 836. At the time its property was rezoned, Thermogas had a vested property right in its land by virtue of the *existing* petroleum operation. Consequently, it was entitled to continue to use its property for that purpose, even though the tract—as well as adjacent properties—was restricted to residential use by the City. *City of Beech Grove v. Schmith* (1975), 164 Ind.App. 536, 329 N.E.2d 605, 609.

1. We refer to the action throughout as being one for a variance since that terminology is used by the parties. The term is not necessarily inappropriate even though an alteration of a non-conforming use is at issue.

2. The dissent urges that we should refuse to permit the expansion of non-conforming uses, citing *Fidelity Trust Co. v. Downing* (1946), 224 Ind. 457, 68 N.E.2d 789; *Chizum v. Elkhart County Plan Comm.* (1970), 147 Ind.App. 691, 263 N.E.2d 654; and *O'Banion v. State ex rel. Shively* (1969), 146 Ind.App. 223, 253 N.E.2d 739. We have no quarrel with those decisions but note that they concern the alteration or expansion of non-conforming uses where zon-

ing board approval was denied or never sought. We do not believe that they preclude a zoning board from exercising its discretion in granting relief, nor do we suggest that Thermogas was entitled to relief as a matter of law.

1. IC 1971, 18–7–5–82, *supra,* reads in pertinent part:

"4. Authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, . . . ."

In 1977, Thermogas applied for a variance so that it might expand its petroleum operation to include the storage and delivery of liquid fertilizer. Its petition for the variance was motivated by its assessment that the operation of the petroleum business alone was not economically feasible. The Board of Zoning Appeals granted Thermogas' petition for a variance.

As noted by the Majority, economic considerations by themselves do not justify the granting of a variance. *Board of Zoning App. of City of Whiting v. McFadden* (1975), 166 Ind.App. 534, 337 N.E.2d 576, 579; *Light Co. v. Houghton* (1967), 141 Ind. App. 93, 226 N.E.2d 341, 343–44. Rather, economic considerations are but one factor in the determination whether a petitioner endures the "unnecessary hardship" which is statutorily required to obtain a variance. As the Millers have pointed out in their brief, these factors were established by the Supreme Court in *City of East Chicago v. Sinclair Refining Co.* (1953), 232 Ind. 295, 111 N.E.2d 459:

> "The conditions necessary to establish 'unnecessary hardship' were concisely stated in *Otto v. Steinhilber*, 1939, 282 N.Y. 71, 24 N.E.2d 851, at page 853:
>
> > 'Before the Board may exercise its discretion and grant a variance upon the ground of unnecessary hardship, the record must show that (1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself; and (3) that the use to be authorized by the variance will not alter the essential character of the locality.'
>
> \* \* \* \* \* \*
>
> "We approve the rules above stated. . . ." (Citations omitted.)

232 Ind. at 308, 111 N.E.2d at 465. The Court prefaced its delineation of the evidentiary prerequisites to the grant of a variance with this caveat:

> "The application of the unnecessary hardship doctrine is not governed solely by the size of the area or the particular piece of property upon which the unnecessary hardship is imposed. No single factor determines what constitutes unnecessary hardship, but all relevant factors, when taken together, must indicate that the special conditions are such that *the property affected cannot reasonably be put to a conforming use* because of the limitation imposed upon it by reason of the classification in which it is placed by the terms of the ordinance. *Brackett v. Board of Appeal of Building Department*, 1942, 311 Mass. 52, 39 N.E.2d 956; *St. Onge v. City of Concord*, 1949, 95 N.H. 306, 63 A.2d 221, 223; *Heffernan v. Zoning Board of Review*, 1929, 50 R.I. 26, 144 A. 674, 676." (Emphasis added.)

232 Ind. at 307–308, 111 N.E.2d at 464–465. As emphasized above, the focus of the doctrine concerns whether the evidence reveals that "the property affected cannot reasonably be put to a *conforming* use." (Emphasis added.)

The Majority's analysis rests on the supposition that "nonconforming use", in the context of the case before us, is synonymous with "conforming use." The supposition is erroneous. In relying upon it, the Majority permits Thermogas to do that which it was not entitled to do: *expand a nonconforming use.* In turn, the purpose of the Rochester zoning scheme has been undermined. As Judge Garrard recently explained in *Jacobs v. Mishawaka Bd. of Zon. App.* (1979), Ind.App., 395 N.E.2d 834:

> "In view of the fact that the ultimate purpose of zoning regulations is to confine certain classes of uses and structures to certain areas, non-conforming [sic] uses are not generally favored since they detract from the attainment of that purpose. Thus, the policy of zoning ordinances is to secure the gradual, or eventual elimination of non-conforming [sic] uses and to *restrict or diminish rather than increase such uses.* . . ." (Emphasis added.)

395 N.E.2d at 836.

Heretofore, our Courts, consistent with the principles espoused in *Jacobs, supra,*

have repeatedly refused to permit the expansion of nonconforming uses. In *Fidelity Trust Co. v. Downing* (1946), 224 Ind. 457, 68 N.E.2d 789, the Court held that a refreshment stand which had been gutted by fire could not be reconstructed because the building, prior to the fire, was already worn and dilapidated. Reconstruction, the Court reasoned, would impermissibly extend the nonconforming use beyond its normal life. In *Chizum v. Elkhart County Plan Commission* (1970), 147 Ind.App. 691, 263 N.E.2d 654, the Court held that the erection of light poles around a drag strip, in operation as a nonconforming use, constituted an illegal expansion of that permitted use. And in *O'Banion v. State ex rel. Shively* (1969), 146 Ind.App. 223, 253 N.E.2d 739, the Court, *obiter dictum*, declared that a nonconforming use established for the sale of beer could not be enlarged to encompass the sale of wine and liquor. *Cf. O'Connor v. Overall Laundry, Inc.* (1932), 98 Ind.App. 29, 183 N.E. 134. *But see Jacobs v. Mishawaka Bd. of Zon. App.* (1979), Ind.App., 395 N.E.2d 834 (Staton, J., dissenting.).

Here, by evaluating the evidence in terms of Thermogas' existing nonconforming use rather than in terms of the residential classification of the subject property, the Majority affirms the Board's determination that Thermogas may expand its petroleum operation to include the storage and delivery of liquid fertilizer. The decision does not, as the Majority indicates in its footnote one [1][2], constitute a mere "alteration of a non-conforming [*sic*] use." Rather, the decision effectuates an *enlargement* of a nonconforming use.

The Rochester Board of Zoning Appeals expressly recognized this aspect of its decision in its "Findings of Fact and Conclusions of Law." There, the Board stated:

"[T]here has been an extension of a nonconforming [*sic*] use on the property in question with regard to the hours the business operates during the peak season for the Fertilizer business."

Not only has the scope of activity permitted Thermogas under its nonconforming use been increased (together with a concomitant impact on neighborhood traffic), but the number of hours Thermogas can operate its business has also been expanded—all to the detriment of neighborhood residents. This expansion represents exactly that type of enlargement of a nonconforming use which was rejected in *Chizum v. Elkhart County Plan Commission, supra. See also, O'Banion v. State ex rel. Shively, supra.*

The enlargement of a nonconforming use in an area restricted to residential use should not be permitted because of the effect such changes have on the nature of neighborhood residents' living conditions. In this respect, I note that the Majority has observed that at the hearing conducted before the Board of Zoning Appeals, a City Plan Commissioner had testified that "the property should not be zoned 'residential'". The transcript reveals that it was the *denial* by the *entire* Plan Commission of Thermogas' request for rezoning which triggered Thermogas' petition for a variance before the Board of Zoning Appeals. As an appellate court, we are not concerned with what use restrictions "should" or "should not" be imposed on particular property; rather, we are governed by the use restrictions which *are* imposed on the land by local legislative officials. *See generally, Theta Kappa, Inc. v. City of Terre Haute* (1967), 141 Ind.App. 165, 226 N.E.2d 907, 912.

Here, the property-in-question had been designated by the City for residential use. An expansion of a nonconforming use within the neighborhood is erroneous not only

2. I note that in footnote one [1], the Majority suggests that it does not matter whether the issue before us is characterized as a "variance" or an "alteration [expansion] of a non-conforming [*sic*] use." That observation directly contradicts our Supreme Court's holding in *Anderson Lumber & Supply Co. v. Fletcher* (1950), 228 Ind. 383, 89 N.E.2d 449, 452 that "These theories are irreconcilable." There, based on the disparate nature of the two theories, the Court rejected appellant's contention that a variance was not necessary because "its real estate was a continuance of a nonconforming use." *Id.* Here, Thermogas applied for a *variance*, the Board granted a *variance*, and this Court is engaged in the review of the propriety of the *variance* granted to Thermogas.

for the particular effects the change has on the lifestyle of the residents, but also because, as exemplified by the Majority's holding here today, one deviation from a zoning ordinance tends to precipitate another. *See, e. g., Jacobs v. Mishawaka Bd. of Zon. App., supra.* For example, one criteria established by our Supreme Court in *City of East Chicago v. Sinclair Refining Co., supra,* for the determination of whether "unnecessary hardship" exists is whether the deviant use will "alter the essential character of the locality." Future applicants for a variance or extension of a variance can point to the expanded storage and delivery operation which the Majority approves today to support claims that the residential character of the neighborhood has been substantially eroded. I note in that respect that the record is ambiguous as to the scope of the variance which has been granted to Thermogas. It is not clear whether the variance is limited to the added fertilizer operation, or whether it also embraces the original petroleum business which exists as a nonconforming use. If the latter is true, the eventual extinguishment of the petroleum operation in the neighborhood can no longer be a hope of the residents; if the former is correct, however, the existence of the variance affirmed here will provide foundation for a second variance in the event extinguishment does occur.

The ultimate purpose of zoning regulations is to confine particular uses of property to particular geographical areas. In turn, the public health, safety, and welfare is served. *O'Connor v. Overall Laundry, Inc.* (1932), 98 Ind.App. 29, 37, 183 N.E. 134, 138. Here, the Majority's utilization of the existing nonconforming use to justify the variance accorded Thermogas violates these ends.

To effectuate orderly development and preserve the public welfare, the evidence offered to support a petition for a variance should be assessed in terms of the zoning classification imposed on the property by local legislative officials. That approach was clearly contemplated not only by our Supreme Court in *Sinclair Refining Co., supra,* but also by our legislature when it enacted IC 1971, 18–7–5–82, *supra.* The statute provides that a variance should be granted when "literal enforcement of the *provisions of the ordinance"* (emphasis added) results in unnecessary hardship. Here, as the Millers have argued, there is no evidence to establish that the property-in-question could not reasonably be put to a *conforming* use. Accordingly, the Majority has erred in affirming the grant of the variance.