Sukthankar's Radnor Township Zoning Appeals.

Argued May 3, 1971, before President Judge BOWMAN and Judges KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*Douglas D. Royal,* with him *Greenwell, Porter, Smaltz & Royal,* for appellant Gilmour in No. 950 (Appellee in No. 72).

*Edward H. P. Fronefield,* with him *Fronefield, de Furia & Petrikin,* for appellee Singh Sukthankar in No. 950 (Appellant in No. 72).

*Sondra K. Slade,* with her *Crawford, Frazier & Diamond,* for intervenor-appellant Township of Radnor in No. 950 (Appellee in No. 72).

OPINION BY JUDGE ROGERS, July 29, 1971:

In this zoning matter the owners of adjoining lots joined issue on whether one of them might convert a carriage house to a dwelling house. The controversy

engendered two cases which we will dispose of by one opinion.

In June 1969, the commissioners of Radnor Township approved the subdivision of a 1.69 acre lot on which there were a mansion house and a carriage house into two lots, one of 1.168 acres on which the house was situated and the other of .522 acres on which the carriage house was located. Robert A. Gilmour and Sandra C., his wife, acquired the lot with the carriage house. This structure had been built in about 1900 and is situated about two and one-half feet from the rear lot line which is a common boundary of the property of Shanti Singh Sukthankar and Beatrice, his wife. One of the side walls of the carriage house varies in distance from the boundary line of another neighbor from about two and one-half to twenty-two (22) feet.

Gilmour, desiring to use the carriage house as a dwelling, applied for a permit to make appropriate interior alterations. This was issued. Singh Sukthankar appealed to the Zoning Hearing Board which affirmed the building inspector's grant of the permit. Singh Sukthankar then appealed to the Common Pleas Court which reversed the Board but by its opinion suggested that Gilmour might be entitled to do by variance what it concluded he might not do by right. Gilmour appealed this decision to the Supreme Court, which has transferred the matter here, where it is docketed as No. 950 Transfer Docket 1970.

Gilmour applied anew for the permit to alter the carriage house, was refused and appealed to the Zoning Hearing Board contending that, in the circumstances, he was entitled to a variance. After a substantial evidentiary hearing, the Zoning Hearing Board granted the variance, Singh Sukthankar again appealed to the Court of Common Pleas which, consonant with its ear-

lier suggestion, affirmed the Board's grant of a variance but modified the Board's order by requiring Gilmour to construct a fence along the rear and one side line and by directing that no outside structural changes may be made to the carriage house "and no other building or structure erected upon the property for residential use or occupancy." Singh Sukthankar has appealed to this court to No. 72 Commonwealth Docket 1971.

The properties in question are located in the R-2 zoning district of Radnor Township. The Gilmour lot conforms with the lot area requirement of 20,000 square feet. The carriage house is so located as to conform to the front yard requirement. One side yard is deficient of the 20 foot minimum fixed by the ordinance. Whether the rear yard, about two and one-half feet in depth, conformed to zoning regulations prior to the Gilmours' acquisition is in dispute. Singh Sukthankar contends that since the carriage house was an accessory building it could be located at any distance from the rear line because the requirement of a 40 feet rear yard refers only to the location of the main building. The Gilmours argue that a proper reading of the regulations, including those applicable in other less restricted zoning districts of the township, supports the conclusion that in the R-2 district even accessory buildings are subject to the 40 foot rear yard requirement. Our general conclusion makes a decision on this narrow point unnecessary.

The carriage house was constructed and located with reference to the rear and side lot lines in question long before there was any zoning ordinance in Radnor Township. Photographs in the record show it to be substantial two-story, stone building not dissimilar in appearance to a dwelling house and wholly in keeping with the grand style of the turn of the century when fashion encouraged and tax levy permitted the establishment

of Trianons, complete with hameaux, on the Main Line. It justifies the substantial expenditure intended by Mr. Gilmour, an architect, in its alteration.

It is the Gilmours' position that the building inspector correctly granted him the permit to alter the interior of the carriage house. The township of Radnor, which intervened, supports this position. We agree with them.

The Gilmours' intended residential use of the carriage house is, of course, permitted in the R-2 district. They applied for a permit to make alterations because Article XIX, Section 1901 of the Radnor Township Zoning Ordinance provided that "a permit shall be required prior to the erection or alteration of any building, structure, or portion thereof, prior to the use or change in use of a building or land, . . . and prior to the change or extension of a non-conforming use." By Article XIX, Section 1903, no building or use permit might be issued until certification by the building inspector that "the proposed building or alteration and the proposed use of the property complies with all the provisions of this ordinance." Since the proposed use complied, the only question was whether the building complied. Obviously as to side yard, and possibly as to rear yard, it did not unless by reason of its existence prior to any zoning regulation it enjoyed an immunity from zoning strictures. The Gilmours and Radnor Township point to the provisions of Article XVIII of the ordinance as providing such immunity and we are persuaded that it does:

"Article XVIII
General Regulations

"Section 1800. Nonconforming Buildings, Lots and Uses. The following regulations shall apply to existing lawful buildings, lots and uses which do not con-

form to the provisions of this Ordinance or to the provisions of any subsequent amendment hereto.

"1. CONTINUATION. Any lawful nonconforming condition or use of a building or lot existing at the effective date of this Ordinance or of any subsequent amendment hereto, or authorized by a building permit issued prior to the adoption of this Ordinance, may be continued although such condition or use does not conform to the provisions of this Ordinance.

"2. EXTENSION. A nonconforming condition and/or use may be extended only as follows:

"a. Nonconforming Building: A nonconforming building may be altered or enlarged if the alteration or enlargement itself is in compliance with the then provisions of this Ordinance."

The Ordinance thus clearly provides for the continuance not only of nonconforming uses but also of nonconforming conditions of buildings. It further authorizes the alteration of a nonconforming building as intended by the Gilmours. A thorough examination of the Ordinance discloses no restriction upon a change from one conforming use to another conforming use in a building having a condition of nonconformity.

The most helpful authority research has brought to light is *Torongo v. Lower Makefield Township*, 13 Bucks Co. L. Rep. 478 (1963). There on essentially similar facts applied to regulations less clear than Article XVIII of the Radnor Ordinance, it was held that a barn nonconforming as to set back but conforming as to use might be converted so as to accommodate another permitted use although the nonconforming condition would continue. Judge SATTERTHWAITE's reasoning is helpful here: "Occupancy of the land by the barn is and has been a lawful and permitted use under the pertinent regulations for R-1 Districts, as would be the occupancy thereof as a single family residence;

Section 301 of the zoning ordinance not only expressly provides for the latter, but also authorizes 'customary agricultural and horticultural operations.' Since, therefore, no problem of nonconforming uses is presented, a fortiori, no question of alteration or extension of an out-of-step type of use is involved. The only nonconforming aspect of the structure is its reduced set-back from the road. This feature, which admittedly may be preserved as an unquestioned matter of right so long as the building retains its use character as a barn, will not factually be changed in the slightest by the proposed conversion. Structurally, the identical walls will in fact remain unchanged in the identical location with relation to the roadway. We are unable to perceive how the conversion of the function of such walls from one lawful and permitted purpose to another may in law be properly considered to constitute an alteration or extension of the nonconformity thereof."

The learned court below concluded that the use of the carriage house as a dwelling house would be nonconforming for the reason that the building encroaches on the rear and side yards. This ignores the distinction between nonconforming uses and nonconforming buildings, obvious in fact and recognized in law. *Fagan v. Zoning Board of Adjustment,* 389 Pa. 99, 132 A. 2d 279 (1957); *Yocum Zoning Case,* 393 Pa. 148, 141 A. 2d 601 (1958). In any case, there is no reason in the law why Radnor Township should not, as it did, authorize the alteration of a nonconforming building so as to accommodate a permitted use. We are aware that the Ordinance thus permits the conversion to residential use of other buildings having nonconforming conditions. Since, however, the township has intervened in support of the permit here sought, Mr. Singh Sukthankar's apprehensions for the future of the neighborhood may be, and we hope are, unfounded. Such con-

496

sideration must not however influence us. *Heidorn Appeal,* 412 Pa. 570, 195 A. 2d 349 (1963).

Since our reversal of the order entered in the appeal to No. 950 Transfer Docket 1970 renders the appeal from the judgment appealed from to No. 72 Commonwealth Docket 1971 moot, we are not required to comment on that case.

The Order entered April 1, 1970, to No. 14081 of 1969, in the Court of Common Pleas of Delaware County, sur appeal of Shanti Singh Sukthankar from the decision of the Zoning Hearing Board of Radnor Township, being No. 950 Transfer Docket 1970, is reversed and the permit revoked by said Order is hereby reinstated.

The Order entered December 29, 1970, to No. 622 of 1970, in the Court of Common Pleas of Delaware County, sur appeal of Shanti Singh Sukthankar from the decision of the Zoning Hearing Board of Radnor Township is vacated, the issue it determined being moot, and the appeal to No. 72 Commonwealth Docket 1971 is quashed.

Judge MANDERINO dissents.