**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

|  |  |  |
|---|---|---|
| | } | |
| <u>Appeal of Van Nostrand</u> | } | **Docket No. 209-11-04 Vtec** |
| | } | **101-5-05 Vtec** |
| | } | |

## <u>Decision and Order on Cross-Motions for Summary Judgment</u>

There are now two appeals pending in this Court involving the same parties and properties. These appeals were consolidated by Entry Order of June 1, 2005. In the first appeal, Docket No. 209-11-04 Vtec, Appellant-Applicants Ronald C. Van Nostrand and Elizabeth M. Van Nostrand appealed from a decision of the Town of Salisbury Development Review Board (DRB) reversing the Salisbury Zoning Administrator's (Salisbury ZA) and Health Officer's[1] approval of Appellant-Applicants' applications for a zoning permit to construct a four-bedroom single-family house and septic system on their 24-acre parcel; the second appeal, Docket No. 101-5-05 Vtec, was also filed by Mr. & Mrs. Van Nostrand and is from the DRB's denial of a requested variance from § 502 of the Salisbury Zoning Regulations (Regulations). Appellant-Applicants are represented by Donald R. Powers, Esq.;[2] Appellee Linda C. Nordlund is an abutting landowner and is represented by Karl W. Neuse, Esq. The Town of Salisbury has not entered an appearance in this matter, but interested persons Thomas and Margaret Quigley and Dorothy White entered their appearances and represent themselves.

---

[1] The Salisbury Zoning Administrator also serves as the Salisbury Health Officer.

[2] By letter dated June 20, 2005, Attorney Powers advised that due to a conflict arising, he would be filing a motion to withdraw. His letter referenced only Docket No. 101-5-05 Vtec. No such motion has been filed in either docket, but on June 28, 2005, Attorney James C. Foley, Jr., Esq. filed his Notice of Appearance for Mr. & Mrs. Van Nostrand in Docket No. 101-5-05 Vtec. The Court's dockets in each appeal will continue to reflect both attorneys' appearance for Appellant-Applicants until further notification or motion is made by either attorney.

Both parties have filed cross-motions for summary judgment in these de novo appeals. The issues presented by their motions and Appellants' Statements of Questions can be summarized as follows:

(a) Does Appellant-Applicants' previous subdivision permit, obtained on April 4, 2000, establish a right to develop their parcel that cannot later be collaterally attacked in this subsequent zoning proceeding?

(b) Which version of Regulations § 502 applies to the pending application now under appeal, and does the applicable section prevent Appellant-Applicants from obtaining a zoning permit?

(c) Is the existing easement across Appellee's property, serving Appellant-Applicants' 24-acre parcel, a lawful right-of-way for access; and

(d) If the current § 502 prevents Appellant-Applicants from obtaining the zoning permit now under appeal, is a variance available that would allow Appellant-Applicants to use the right-of-way as access to their 24-acre parcel?

## Factual Background

The following facts are undisputed unless otherwise noted.

1. Appellant-Applicants own two parcels of property on the westerly side of West Shore Road on Lake Dunmore. The first is a rectangular parcel of approximately 1.1 acres with frontage on West Shore Road (the front parcel). The second parcel (the back parcel) is an interior parcel of approximately 24 acres with no road frontage, but served by a right-of-way traversing the 1.1-acre front parcel and the northwesterly corner of Appellee's lot.

2. Appellee owns a parcel of developed land immediately to the south and east of Appellant-Applicants' parcels. Appellee's parcel abuts Appellant-Applicants' front parcel to the south and has frontage on West Shore Road. Appellee's parcel also abuts Appellant-Applicants' back parcel to the east. Appellee's camp house is to the

2

southeast of and is approximately thirteen or fourteen feet from Appellant-Applicants' right-of-way burdening Appellee's parcel.

3.      On April 4, 2000, Appellant-Applicants' predecessors-in-title received subdivision permit #00-8 (the 2000 permit) which allowed for the subdivision that resulted in the creation of the two lots now known as the front parcel and the back parcel.[3]  At the time, the Salisbury ZA determined that the subdivision complied with the Town's Subdivision Regulations, specifically § 502, which at the time required parcels without road frontage to be served by a right-of-way at least twenty feet in width.

4.      No individual filed a timely appeal from the 2000 permit.

5.      Appellee argues that the width of the right-of-way over her parcel is not twenty feet, describing it as being between ten and twelve feet wide.  While they do not contest this characterization, Appellant-Applicants contend that the section of the right-of-way traversing their 1.1-acre parcel is at least twenty feet wide.

6.      On March 5, 2002, the Town amended Regulations § 502 so as to increase the required width of any right-of-way access for a parcel without road frontage to fifty feet.[4]

7.      The parties dispute whether an access for the back parcel could be created over Appellants' front parcel that would comply with the current version of § 502 (i.e.: 50 feet wide).

---

[3]  The 2000 permit notes that it is a renewal of a prior permit (#99-66).  A copy of the 2000 permit was attached to Appellants' Affidavit as Exhibit 2.  The Court was not provided with a copy of the 1999 permit.

[4]  The current § 502 of the Regulations states:

> No land development may be permitted on lots which do not have either frontage on a public road, or public waters, or with the approval of the planning commission, access to such a road or waters by a permanent easement or right of way at least fifty (50) feet in width.

Regulations § 502.  The only difference in the version of § 502 in effect prior to March 5, 2002, was that the required width of access rights-of-way was twenty feet.

8. The right-of-way, including that portion that travels over Appellee's property, is described as follows in an old deed from Farnham to Harris (Book 23, Page 286): "The Grantor reserves a right of way over an old logging road which cuts across the northwesterly corner of the lands hereby conveyed." This and any other description of the right-of-way do not mention its width, its specific location (aside from the reference to the "old logging road"), nor an express limit on its use.

9. On August 19, 2004, Appellants applied for permits for the back parcel to construct a four-bedroom, single-family house and a supporting septic disposal system. On August 21, 2004, the Salisbury ZA issued zoning permit #04-49 and, as the Health Officer, issued disposal system construction permit #04-50.

10. Appellee filed a timely appeal of those permits with the DRB.

11. The DRB held a public hearing and a deliberative session on Appellee's appeal. On October 28, 2004, the DRB issued its decision, reversing the Salisbury ZA's issuance of permits #04-49 and #04-50.

12. The Appellant-Applicants timely filed an appeal of the DRB's denials with this Court, which are the subject of Docket No. 209-11-04 Vtec.

13. While that appeal was pending with this Court, Appellants applied for a variance from Regulations § 502 to reduce the required right-of-way width to twenty feet for their back parcel. After a hearing and a deliberative session, the DRB announced its denial of Appellants' variance request by a decision dated April 21, 2005.

14. Appellants thereafter timely appealed from the DRB's April 21, 2005 variance denial to this Court. That appeal is the subject of Docket No. 101-5-05 Vtec.

### Discussion

Appellant-Applicants argue that Appellee's challenge to their zoning permit amounts to a collateral attack on their subdivision permit obtained on April 4, 2000, by Appellant-Applicants' predecessors-in-title. Appellant-Applicants note that their subdivision permit was not appealed and therefore became final as of that date and

4

cannot now be challenged, directly or indirectly. See 24 V.S.A. § 4472 (2004). In addressing this first issue, we must determine the context and relevancy of Appellants' 2000 subdivision permit to the 2004 permits, which are the subject of these appeals.

Our Supreme Court has directed that a subdivision permit is independent from an application for a zoning permit and does not create a vested right for a zoning permit. See In re Appeal of Taft Corners Assocs., Inc., 171 Vt. 135, 141 (2000). It appears that even the Appellants here respect the precedent of Taft Corners, as they do not dispute that they must obtain a zoning permit to go forward with their plans to develop their back parcel with a four-bedroom, single-family house.

The applicant in Taft Corners asserted that its 1987 subdivision permit, creating some 38 independent lots, vested it with the right to obtain commercial or retail use permits in 1997 under the 1987 zoning regulations, even though the regulations were amended in the intervening ten years to limit commercial and retail uses to properties within the zoning district that had obtained conditional use approval. So, while the precedent of Taft Corners is applicable to this case, it does not appear here that Appellants are asserting the same vested right flowing from their subdivision approval that led to the Supreme Court's admonishment in Taft Corners. To the extent that Appellants here are claiming that the prior subdivision approval somehow vests them with the right to a review of their 2004 zoning application under the 2000 zoning regulations, we reject their claim as being contradictory to Taft Corners.

The 2000 subdivision permit, which created the back lot in the pending appeal, became final when no party filed a timely appeal of it. 24 V.S.A. § 4472(d). All interested persons to an unappealed municipal land use determination, including those individuals who were entitled to seek interested person status, but chose not to, as well as persons who later acquired title to the subject properties, "shall be bound by that decision or act" from which no appeal was successfully taken. Id. Therefore, it is undisputable, and undisputed by the parties here, that the 2000 subdivision permit

5

cannot be collaterally attacked in these appeal proceedings. The question remains as to what relevancy, if any, the 2000 subdivision permit is to the zoning applications now under appeal.

When the Town revised its zoning regulations to require landlocked parcels to be served by an easement or right-of-way of no less than 50 feet in width, the back parcel retained its lawful, permitted status, but became a pre-existing nonconforming lot. 24 V.S.A. § 4303(16). Nonconforming lots are not defined or addressed in the Salisbury Zoning Regulations,[5] although the Regulations do follow the common practice of establishing that nonconforming uses and structures "may be continued indefinitely," under certain conditions generally established to limit the expansion of the nonconformity. Regulations § 512.

Appellee appears to argue that once § 502 was amended, land development could not occur on Appellants' back parcel, since it is not served by a 50-foot wide easement or right-of-way. This argument appears to ignore the history and precedent of lawful, pre-existing nonconformities. It also appears to lead to the rather draconian result that Appellants' back parcel lost any ability to be developed for a permitted use by operation of the zoning amendment. We believe Appellee's argument runs counter to precedent from our jurisdiction and others, and therefore reject it.

Zoning regulations are an important and necessary tool for municipalities, but we recognize that zoning regulations restrict and derogate individual common law private property rights. Thus, we are directed that "in construing land use regulations any uncertainty must be decided in favor of the property owner." In re Weeks, 167 Vt. 551, 555 (1998) (citing In re Vitale, 151 Vt. 580, 584 (1989)). We therefore cannot construe the zoning amendment here to result in a prohibition against any use of Appellants' lot, solely due to the now nonconforming width of their right-of-way, when that right-of-

---

[5] Municipalities are authorized to regulate nonconformities in general, and nonconforming lots in particular, under the recent revisions to 24 V.S.A., Chapter 117. See 24 V.S.A. §4412(7).

way width was deemed in compliance with the zoning regulations when its subdivision was approved.

The legal precedents controlling nonconforming structures and nonconforming activities are sometimes difficult to grasp, particularly when the precedents are mistakenly merged "under the single denotation of 'nonconforming use.'" In re Miserocchi, 170 Vt. 320, 328 (2000). In an attempt to clarify a clouded area of legal precedent, the Court went on in Miserocchi to explain that "'[u]se' restrictions limit the activities that may take place within a certain area, while 'bulk' restrictions control setbacks and size, shape and placement of buildings on the property." Id. (citing 7 P. Rohan, Zoning and Land Use Controls § 42.01[4], at 42-9 (1991)).

We perceive the nonconforming right-of-way width here as more similar to the "bulk" nonconformities addressed by the Court in the Miserocchi case. The appellant in that case sought zoning approval to use a barn as a residence, which was a permitted use in the applicable zoning district. The barn, however, did not comply with the current zoning regulations, as it was no more than 20 feet from the town road. The applicable zoning regulations required a minimum 40 foot setback from the road. The Environmental Court first determined that the applicants in Miserocchi could only conduct the requested permitted use in their noncomplying barn in that portion of the barn that was forty or more feet from the roadway. The Supreme Court reversed, saying that the Miserocchi applicants were entitled to use the entire noncomplying structure for a permitted use, since their residential use of the noncomplying barn would "not increase the nonconformity." Id. at 328.

The Supreme Court in Miserocchi also cited several other jurisdictions with similar legal precedents concerning nonconforming uses and structures, including Connecticut where a noncomplying structure was permitted to be changed from one permitted use, a church, to another permitted use, a single-family residence. Petruzzi v. Zoning Bd. of Appeals, 408 A.2d 243,246-47 (Conn. 1979). In Pennsylvania, a carriage

7

house was permitted to be used as a dwelling house, since both were permitted uses in the applicable zoning district, even though the structure was noncomplying due to a setback encroachment. Singh Sukthankar v. Hearing Bd. of Radnor Township, 280 A.2d 467, 470 (Pa. Commw. Ct. 1971); see also Spring Garden Civic Ass'n v. Zoning Bd. of Adjustment, 617 A.d 61, 64 (Pa. Commw. Ct. 1992) (existing nonconforming structure may be put to any permitted use so long as altered use does not increase nonconformity of structure). In Massachusetts, the Appeals Court remanded a zoning appeal to the local board to determine whether a change from one permitted use to another (carriage house to a single-family dwelling) would increase the nonconformity. Goldhirsh v. McNear, 590 N.E.2d 709, 712 (Mass. App. Ct. 1992).

As in Miserocchi, Appellant-Applicants here are entitled by the applicable zoning regulations to conduct a permitted use on their property "indefinitely," so long as their use of the property does not change or increase the nonconformity. Miserocchi, 170 Vt. at 328-29. The sole nonconformity in the appeals at issue here is the width of the right-of-way. As such, the nonconformity rests with the nature of the lot, not with a structure on it, nor with a use proposed for it. The fact that a permitted, subdivided parcel of undeveloped land no longer complies with the applicable zoning laws cannot be a basis for denying a permitted use on the property, in the absence of any other claims of noncompliance. Weeks, 167 Vt. at 555 (citing Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 51 (1986)) (lawful pre-existing, noncomplying "parcels retain their development rights even though their area is less than prescribed by the ordinance.")

The sole question remaining, therefore, appears to be whether Appellant-Applicants' proposed development of their back parcel for use as a single-family residence will "increase" the nonconformity of the right-of-way. The facts surrounding how wide the right-of-way approved by the 2000 subdivision permit is, particularly as it crosses Appellees' land, and whether the planned use of the back parcel will result in an expansion of the noncompliance, are either disputed facts or facts that are not clearly

8

presented in the parties' filings to date. Thus, the Court will conduct an evidentiary hearing solely on these disputed factual issues and will make a legal determination based upon the facts presented.

We wish to make clear to the parties, however, that the Environmental Court is not vested with the jurisdiction to determine the parties' respective private property rights to land or easements that benefit or encroach upon their property, including the extent of the right-of-way's use. We intend only to determine whether Appellant-Applicants have met their threshold burden of evidencing their interest and right in the property for their proposed development. Any further claims to title, or claims attacking the same, must be presented to the appropriate Superior Court for adjudication.

As a consequence of the determinations here, we do not address Appellant-Applicants' last question, since our determination renders moot the question of whether it is appropriate to issue the variance Appellant-Applicants requested.

Accordingly, based on the foregoing, it is hereby **ORDERED** and **ADJUDGED** that Appellant-Applicants' cross-motion for partial summary judgment is **GRANTED** to the extent that their back parcel is a lawful, pre-existing lot. The fact that it is a nonconformity cannot be the sole basis for denial of Appellant-Applicants' current permit applications. Appellee's motion for summary judgment is **DENIED**.

The Court will conduct a merits hearing on the issues described above for purposes of concluding the appeal in Docket No. 209-11-04 Vtec. That merits hearing will be scheduled pursuant to a separate notice issued by the Court Manager.

In Docket No. 101-5-05 Vtec, the DRB's decision of March 3, 2005, is **VACATED**, thereby concluding that appeal, in light of this Court's determination that Appellant-Applicants do not need a variance from Regulations § 502 to obtain their permit approvals. As these matters are consolidated, we will issue a final judgment order in

Docket No. 101-5-05 Vtec after completion of Docket No. 209-11-04 Vtec, so as not to burden either party with the need to file duplicative appeals.  See V.R.E.C.P. 2(b).


Done at Berlin, Vermont, this 13th day of January, 2006.


_____
Thomas S. Durkin, Environmental Judge